THE VILLAGE OF ALTAMONT

*v.*

THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY CO.

*Opinion filed February 19, 1900.*

1. MUNICIPAL CORPORATIONS—*when exercise of power must be by ordinance.*   Clause 96 of section 1 of article 5 of the City and Village act, (Rev. Stat. 1874, p. 223,) providing that cities and villages may pass any ordinances necessary to carry into effect powers granted by such section, contemplates the passage of an ordinance whenever legislative action by such municipalities establishes a permanent rule of conduct or is to have continuing force.

2. SAME—*section 35 of Railroad act and section 1 of article 5 of City and Village act must be construed together.*   Section 35 of the act on the operation of railroads, (Rev. Stat. 1874, p. 813,) providing for the placing of flagmen at crossings upon notice by municipal corporations, and section 1 of article 5 of the City and Village act, clause 27 of which confers similar power upon such municipalities, relate to the same subject and must be construed together.

3. SAME—*ordinance must precede notice to place flagman at crossing.* A municipal corporation cannot recover the penalty provided in section 35 of the act on the operation of railroads, for failure of a railroad company to obey a notice to place a flagman at a crossing, unless such notice was preceded by the passage of an ordinance declaring the necessity for such flagman.

*B. & O. S. W. Ry. Co.* v. *Vill. of Altamont,* 84 Ill. App. 274, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Effingham county; the Hon. WILLIAM M. FARMER, Judge, presiding.

This was an action of debt, brought in the circuit court of Effingham county by the village of Altamont, against the Baltimore and Ohio Southwestern Railway Company, to recover $100 per day for a failure to place and maintain watchmen at the street crossing in the village of Altamont designated in the pleadings as East and West Center street and East and West Maple street. The action was instituted under paragraph 99 of chapter 114, (Hurd's Stat, 1895, p. 1205,) relating to flagmen at street crossings.

The declaration contained two counts. The jury were instructed to disregard the first count. It will therefore only be necessary to allude to the second count, which was as follows:

"And whereas, also, on the day first aforesaid, the plaintiff was an incorporated village, incorporated under the general law for the incorporation of cities, within the said county of Effingham, and at said date had charge and control of all the streets within the corporate limits of the same, and the defendant at said date was and still is the owner of and operating and using a certain railroad by the running of trains of cars for the transportation of freight and passengers through the said village and over and across East and West Maple street, within the corporate limits of said village; and on the 28th day of February, 1898, at a regular meeting of the president and board of trustees of the said village of Altamont, adopted a motion for a notice to be served on J. M. Orrell, station agent of the Baltimore and Ohio Southwestern Railway Company, that a flagman is necessary at the railroad crossing of the said Baltimore and Ohio Southwestern Railway Company of East and West Maple street, in the said village of Altamont, and that S. McVicker be directed to serve said notice. Motion was adopted by yea and nay vote, and was carried by six yeas and no nays, and the plaintiff, on the 29th day of June, 1898, notified one J. M. Orrell, an agent of the defendant, residing in

said village, in writing, that a flagman was necessary at the crossing of the said defendant's railroad of East and West Maple street, in said village, being the notice provided for at said meeting, whereupon it became and was the duty of defendant, within sixty days from and after the said 29th day of June, 1898, to place and maintain a flagman at said crossing of said Maple street by defendant's said railroad, but the defendant neglected and refused to place and maintain a flagman at said crossing, contrary to the form of the statute in such case made and provided, whereby and by force of the said statute an action hath accrued to the plaintiff to demand of the defendant the sum of $100 per day for every day the defendant neglected and refused to place and maintain a flagman at the said crossing of defendant's railroad over the said East and West Maple street after the lapse of sixty days after said 29th day of June, 1898, amounting to the sum of $1800, separate of the said sum of $4200 first above demanded; yet the defendant, although requested, has not paid to the plaintiff the last mentioned sum of money or any part thereof, but refuses so to do, to the damages of the plaintiff," etc.

To the declaration the defendant pleaded *nil debet* and not guilty, and on a trial before a jury plaintiff recovered a judgment for $1500, which, on appeal, was reversed in the Appellate Court, and the plaintiff has appealed to this court.

S. F. GILMORE, and JACOB ZIMMERMAN, for appellant.

ROBERT E. HAMILL, and WOOD BROS., for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Paragraph 99 of the Railroad act, (Hurd's Stat. 1895, p. 1205,) under which the action was brought, provides: "In all cases where the public authorities having charge of any street over which there shall be a railroad cross-

ing shall notify any agent of the corporation owning, using or operating such railroad, that a flagman is nec: essary at such crossing, it shall be the duty of such railroad company, within sixty days thereafter, to place and retain a flagman at such crossing." The paragraph further provides that any railroad company refusing or neglecting to place flagmen as required shall be liable to a fine of $100 a day for every day it shall neglect or refuse.

Among the powers conferred upon the city council in cities and the president and board of trustees in villages is the following: "Twenty-seventh,—To require railroad companies to keep flagmen at railroad crossings of streets." (Hurd's Stat. 1895, par. 62, chap. 24, p. 264.) The latter part of paragraph 62 empowers the city council in cities and the president and board of trustees in villages to pass all ordinances proper or necessary to carry into effect the powers granted. The village of Altamont, the appellant, was organized as a village under the general law for the incorporation of cities and villages, and it could only exercise the powers conferred in the mode provided by the statute. Paragraph 99 and paragraph 62, *supra*, relating to the same subject matter, must be construed together.

As has been seen, paragraph 62 expressly authorizes cities and villages to require railroad companies to keep flagmen at railroad crossings, and paragraph 99 declares that where the public authorities shall notify any agent of the railroad company owning, using or operating such railroad that a flagman is necessary at such crossing, it shall be the duty of such railroad company, within a specified time, to maintain a flagman at such crossing. Under these two sections, where it may be necessary the city authorities are clothed with power to act. But the question arises, in what way may they act? Are the city authorities required to pass an ordinance in which it is determined that a necessity exists for a flagman at a certain railroad crossing and requiring the railroad com-

pany to place a flagman at such crossing, or may the
city authorities, or a majority of them, meet and direct
the marshal or some other agent of the city to notify the
railroad company to place a flagman at a certain cross-
ing? We think it is manifest that the city council can
act only by ordinance. Acts of legislation by a munici-
pal corporation which establish a permanent rule of con-
duct or government, and which are to have a continuing
force and effect, must be established by ordinance.

In *Chicago and Northern Pacific Railroad Co.* v. *City of
Chicago*, 174 Ill. 439, the question arose whether the grade
of a city could be established by a resolution, and in
passing upon the question the court said (p. 445): "A
resolution or order is not a law, but merely the form in
which the legislative body expresses an opinion. An
ordinance prescribes a permanent rule of conduct or gov-
ernment, while a resolution is of a special and temporary
character. Acts of legislation by a municipal corpora-
tion which are to have continuing force and effect must
be embodied in ordinances, while mere ministerial acts
may be in the form of resolutions. * * * Where the
charter requires an act to be done by ordinance, or where
such a requirement is implied, as it is here, by necessary
inference, a resolution is not sufficient but an ordinance
is necessary." If an ordinance is required to establish
the grade of a street, upon the same principle where the
safety of the public requires a flagman to be stationed
at a railroad crossing that should be done by ordinance.

In *Illinois Central Railroad Co.* v. *Gilbert*, 157 Ill. 354,
after quoting the twenty-seventh subdivision of para-
graph 62, *supra*, it is said (p. 367): "The authority to pro-
vide protection to persons in the use of such railroad
would authorize the enactment of ordinances which would
reasonably tend to protect persons from injury by the
use made of the road by the company." Indeed, there is
no intimation in that case, or in any other case, so far as
we are advised, from which the conclusion can be reached

that the city council of a city or president and board of trustees of a village could impose a liability on a railroad company in regard to its crossing in a city or village, in any other way than by an ordinance passed in the mode required by law.   Here, no ordinance was ever passed by the village of Altamont, but on February 28, 1898, at a meeting of the board of trustees of the village a motion was adopted that the following notice be served on J. M. Orrell, station agent of the Baltimore and Ohio Southwestern Railroad Company, by leaving the same with him within three days after date thereof, and that S. McVicker be authorized to make such service, and he be required to make a return to the president and board of trustees at their next meeting, under oath, showing the time and manner of his service:

"*To J. M. Orrell, Station Agent of the B. & O. S. W. R. R. Co.:*

"You are hereby notified that a flagman is necessary at the railroad crossing of said railroad company of East and West Maple street, in the village of Altamont, Illinois, and take notice and place, retain a flagman at the said crossing within sixty days after service of this notice.

"Dated at Altamont, Illinois, this 28th day of February, A. D. 1898.                                THE VILLAGE OF ALTAMONT,
                                        By JOHN R. SNOOK, *President.*
[Seal.]   THEO. E. PIPER, *Village Clerk.*"

Nothing, however, was done under this notice, but on the 29th day of June a notice similar in character, except that it was signed by J. F. Laatsch, president, and L. P. Shab, clerk, was served, dated June 27, 1898.   In the absence of the passage of an ordinance requiring a flagman at the crossing in question the service of the notice shown by the record was of no force and may be regarded as a nullity.   A valid ordinance must precede the notice.

The judgment of the Appellate Court, being in harmony with the views here expressed, will be affirmed.

*Judgment affirmed.*