AUGUSTA OLIVER ET AL., RESPONDENTS, v. BERT DALY ET AL., BOARD OF COMMISSIONERS OF THE CITY OF BAYONNE, APPELLANTS.

Argued May 28, 1926—Decided October 27, 1926.

1. A resolution, by a board of commissioners of a city, governed under the "Walsh act," transferring the head of one department to be the head of another department, as authorized under section 4 of the act, will not be set aside, where the proofs submitted do not justify a judicial declaration that the majority of the board, in adopting the resolution, were not honestly discharging the public duty imposed upon them by their acceptance of such membership.

2. The execution of the powers and the performance of the duties relating to the public library of a city governed under the provisions of the Walsh act must be assigned by the board to the department of parks and public property, and an attempt to transfer these powers and duties to any other of the governmental departments of the city is in violation of the statute.

3. In a city governed under the provisions of the "Walsh act," the appropriate department for dealing with matters relating to the District Court, printing, bureau of child hygiene, bureau of child welfare, day nursery and district nurse, is that of public affairs. The appropriate department for dealing with matters relating to

the offices of city treasurer, comptroller, auditor of accounts, collector of revenue and collector of taxes; as well as matters relating to the water department and the sinking fund department is that of revenue and finance; and for matters relating to the city hall, public buildings and other property of the municipality, is that of parks and public property.

4. The director of revenue and finance is the proper officer to issue, counter-sign and audit all warrants for the disbursements of money.

On appeal from the Supreme Court, whose *per curiam* is printed in 4 *N. J. Mis. R.* 80.

For the appellants, *James Benny* and *Robert H. McCarter.*

For the respondents, *Isaac Gross* and *Merritt Lane.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The legal voters of the city of Bayonne, at an election held on March 9th, 1915, adopted as the municipal charter of the city of the statute of April 25th, 1911, generally referred to as the "Walsh act." *Supp. Comp. Stat., p.* 1087. That statute provides for government by commission, such commission to consist—in cities having as large a population as Bayonne—of a board of five members, who are to hold office for a term of four years each.

The fourth section of that act distributes the executive, administrative, judicial and legislative powers, authority and duties of the city of Bayonne, into and among five departments, as follows: "(1) Department of public affairs; (2) department of revenue and finance; (3) department of public safety; (4) department of streets and public improvements; (5) department of parks and public property." The present board of commissioners, consisting of Messrs. Talbot, Hosford, O'Connell, Axford and Daly, was elected on May 8th, 1923, and, pursuant to the requirement of the statute, designated by a majority vote Talbot as mayor of the municipality, and, *ipso facto,* as director of the department of public affairs, Hosford as director of the department of revenue and finance, O'Connell as the director of the department of public

safety, Axford as the director of streets and public improvements, and Daly as the director of the department of parks and public property.

During the latter part of the year 1924 the board passed a series of resolutions—seven in number—by a majority vote of three to two; Messrs. Hosford, Axford and Daly voting in the affirmative and Messrs. Talbot and O'Connell in the negative. The first of these resolutions was adopted on October 7th, and the other six on December 2d. Shortly after this latter date Talbot and O'Connell, together with a taxpayer of the city, Mrs. Oliver, sued out a writ of *certiorari* to test the validity of these resolutions, charging that each one of them was adopted, not with intent to benefit the people of the municipality, whose official servants the majority members of the board were, but in betrayal of the trust imposed upon them by the acceptance of their respective offices, and solely for the purpose of punishing the minority members for conduct in their respective departments that was in defiance of the wishes of political friends of the members constituting the majority.

The Supreme Court, upon the hearing had upon the return of the *certiorari,* considered that this charge, made by the prosecutors in support of their contention that these resolutions were invalid, was sufficiently supported by the proofs submitted, and for that reason ordered the entry of judgment annulling each of them. From that judgment the present appeal is taken.

We are not able to concur with the Supreme Court in its view that the charge laid against the majority members of the board was supported by evidence sufficiently cogent and convincing to justify a conviction of the offense embraced in the charge, which, to put it mildly, savors of criminality. The evidence, although sufficiently strong to create a suspicion of the truth of the charge, falls far short of the measure of proof required to justify the conclusion that the majority members were guilty of the offense charged against them. Reaching this conclusion, and assuming that the majority of the members voted for these resolutions in good

faith, and in the belief that their adoption would be for the public benefit, we proceed to the consideration of the question whether any of them are unauthorized, under the provisions of the Walsh act.

On the 7th of October, 1924, as has already been stated, the board met, and adopted the first of the resolutions under review, which, after reciting that, in the opinion of the board, the public service would be benefited by its provisions, appointed and designated Daly as director of public safety, in the place of O'Connell, and O'Connell as the director of parks and public property, in the place of Daly. In other words, shifted these two heads of departments, one taking the place of the other.

Section 4 of ·the statute, after authorizing and directing the board of commissioners, at its first regular meeting after the election of its members, to designate by majority vote one commissioner to be the head of each of the several departments already named, then provides that such designation may be changed by the board whenever it appears that the public service will be benefited thereby. The purpose of this provision of the statute, as we see it, is that normally the head of a department, when once designated by the board, shall hold that position during his term of office, subject, however, to be transferred to another department as its head whenever, in the opinion of the board of commissioners, the public service would be benefited by such transfer. In the present case the board, by the resolution now being considered, expressly declared that such transfer would be for the public benefit, and, as we have already stated, the proofs submitted do not justify a judicial declaration that the majority membership of the board, in adopting this resolution, were not honestly discharging the public duty imposed upon them by their acceptance of such membership. Our conclusion, therefore, is that this first resolution is valid, and that the judgment of the Supreme Court to that extent should be reversed.

Taking up now the consideration of the other six resolutions: The first of them undertakes to shift all of the powers

and duties relating to the free public library to the department of public affairs, which is presided over by Mr. Talbot, the present mayor. We consider that this resolution was not authorized by any of the provisions of the Walsh act. The free public library of Bayonne is a part of the public property of that municipality. The statute requires that the municipal powers and duties of this municipality shall be assigned by the board of commissioners to "appropriate departments;" and the public library, being a part of the public property of the city, the execution of the powers and the performance of the duties relating thereto must be assigned by the board to the appropriate department specified in the statute—that is, to the department of parks and public property, where they should have been lodged prior to the adoption of this resolution. The attempt of the board to transfer these powers and duties to any other of the governmental departments of the city is in violation of the statute, *ultra vires* and void. We conclude, therefore, that the Supreme Court was justified in annulling this resolution.

The second of these six resolutions attempted to assign all the duties and powers relating to public parks, playgrounds and pleasure grounds, and all of the property belonging thereto, to the department of parks and public property. Apparently, these duties and powers had previously been assigned to some other department. If this be so, such previous assignment was in violation of the statute, and the resolution which we are now considering was a belated compliance with that provision of the statute which requires that the powers and duties of the municipality shall be assigned by the board of commissioners to "appropriate departments." Our conclusion is that this resolution was proper, and that the judgment of the Supreme Court, so far as it nullifies it, should be reversed.

The next resolution assigns all the powers and duties relating to the city treasurer, comptroller, auditor of accounts, collector of revenue, water department, sinking fund department, collector of taxes, the Bayonne District Court, the pur-

chasing agent, the janitor and assistant janitor of the city hall, the city hall watchman, the switch board operator and city hall engineer, to the department of revenue and finance. This resolution, so far as it assigns the control over the powers and duties relating to the offices of city treasurer, comptroller, auditor of accounts, collector of revenue, water department, sinking fund department and collector of taxes, was, we think, in direct compliance with the requirements of the fourth section of the statute. Our reason for so considering is that which we have expressed, as leading us to the conclusion that the resolution which we have just dealt with is valid. There are, however, some provisions in the resolution which we are now considering that are *ultra vires*— that is, those dealing with the control over the powers and duties of the janitor and assistant janitor of the city hall, the city hall watchman, the switch board operator, the city hall engineer and the District Court. The appropriate department for dealing with the matters relating to the District Court, it seems to us, is that of public affairs. The appropriate department for supervising the exercise of the powers and performing the duties relating to the city hall, which is a part of the public property of the municipality, is, in our opinion, the department of parks and public property; and the resolution which is now under discussion, so far as it attempts to transfer these powers and duties to the department of revenue and finance, is illegal. This resolution also provides that the director of the department of revenue and finance shall have charge and supervision over all printing by and for the city, other than legal or official printing required by law. To us it does not seem that this department is the appropriate one for the supervising of the performance of that duty or the exercise of that power; but that, like the supervision of matters relating to the District Court, it is lodged by the statute in the department of public affairs. We conclude, therefore, that the resolution is valid to the extent that we have indicated, but is invalid in respect to matters that we have also indicated; and that the judgment of the Supreme Court, so far as it deals with this resolution,

should be modified in accordance with the view that we have expressed.

The next resolution undertakes, among other things, to transfer to the department of streets and public improvements the control and supervision over the docks, wharves and buildings of the municipality, the tree department, the automobile repair shop and asphalt plant, and all employes and workmen in the bureau of child hygiene, bureau of child welfare, day nursery and district nurse. This resolution, we think, is invalid, so far as the docks, wharves, buildings and other property of the municipality are concerned.

The proper department under the statute for the exercising of the powers and performing the duties relating to the property of the municipality, as we have pointed out earlier in this opinion, is the department of parks and public property. As to the bureau of child hygiene, the bureau of child welfare, the day nursery and the district nurse, it seems too plain for argument that the department of streets and public improvements is not the appropriate department for the control and management of these matters. So far as they do not embrace public property, they properly belong in the department of public affairs. To the extent indicated, we consider the resolution to be invalid. In other respects, the matters with which it deals, and which it is not necessary to specifically state, are, we think, properly assigned to the department of streets and public improvements. The judgment of the Supreme Court, so far as it deals with this resolution, must be modified in accordance with the views that we have expressed.

The next resolution provides that all the duties and powers relating to the police and fire departments, recorder's court, board of health, overseer of the poor, department of weights and measures, all public buildings, the electrical bureau, the storekeeper and service clerk, be transferred to the department of public safety. This resolution, we think, is legally unobjectionable, with one exception—namely, that it attempts to assign the powers and duties relating to public buildings to the department of public safety. We reiterate that the

appropriate department designated by the statute for the exercise of the powers and the performance of the duties relating to public buildings is the department of parks and public property, and that the board, in the performance of its official duty, must assign them to that department. We conclude, therefore, that the judgment of the Supreme Court, which nullifies this resolution in its entirety, should be modified in accordance with the views that we have expressed.

The last of the resolutions under review designates the director of revenue and finance as the officer to issue, countersign and audit all warrants for the disbursement of money, and requires that all such warrants shall hereafter be signed by the director of revenue and finance. This resolution assigns to that department powers and duties which are appropriate thereto, and, apparently, changes a prior existing situation which was in violation of the Walsh act. The judgment of the Supreme Court setting aside this resolution, we think, was erroneous.

Our conclusion on the whole case is that, to the extent that we have indicated, the judgment of the Supreme Court should be modified.

WHITE, J. (dissenting). Three members of the commission of the city of Bayonne stripped the other two of substantially all their powers and duties. The Supreme Court thought this to be convincing evidence of a willful intent to violate the mandates of the Walsh act and its supplements. I agree with this view, and, consequently, think the remedy of the majority opinion of this court, whereby a large part of such stripping is set aside as innocently *ultra vires,* to be inadequate. I agree that any one of the *ultra vires* provisions, if standing alone, might with entire propriety be considered within the bounds of innocent mistake, but taken all together these provisions, stripping, as they do, two of the commissioners of all their lawful powers, seem to me manifestly the result of a willful conspiracy to defeat the purpose of the legislation and the will of the voters, and as such should be set aside *in toto* as directed by the Supreme Court.

Mr. Justice Black requests me to say that he concurs in the foregoing views.

*For affirmance*—BLACK, WHITE, JJ.    2.

*For reversal*—THE CHIEF JUSTICE, MINTURN, KALISCH, CAMPBELL, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ.    8.