## DICKSON v. HARDY.*
### No. 4472.

Court of Appeal of Louisiana, Second Circuit.
Dec. 7, 1932.

---

*Rehearing denied January 19, 1933.

520

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

Aubrey M. Pyburn, City Atty., and George W. Hardy, Jr., both of Shreveport, for appellee.

DREW, J.

The city of Shreveport, formerly governed by the aldermanic form of government, availed itself of the provisions of Act No. 302 of 1910, and adopted the commission form of government, by which it is now governed. After adopting the commission form of government, and on November 14, 1910, in accordance with the provisions of section 4 of Act No. 302 of 1910, the following resolution was adopted:

"By Mr. Fullilove:

"Be it resolved by the Council that the duties pertaining to the following departments of the City be referred to as follows:

"To the Mayor: Public Affairs, Public Education, Board of Health, Legal Department, City Physician, Public Property, Sanitary Regulations, Railways.

"To the Superintendent of Department of Finance and Accounts: Accounts, Finances, Secretary and Treasurer and Tax Collector,

Auditor, Red River Bridge, Fiscal Agent, Official Printing.

"To the Superintendent of the Department of Public Safety: Fire Department, Police Department, Impounding Animals, City Jail, License Clerk, Dog Tax, City Court.

"To the Superintendent of the Department of Public Utilities: Cemeteries, Building Inspector, Plumbing Inspector, Traction Companies, Lights, Waterworks and Sewerage, Gas Inspectors, Signs, Electrical Inspection.

"To the Superintendent of the Department of Streets and Parks: City Engineer, Streets, Parks, Crematory, City Stables, Sidewalks, Improvements.

"Adopted."

Act No. 31 of 1910 authorized the registrar of land office to sell and convey to the city of Shreveport the bed of what is known as Cross Lake, in Caddo parish, La., and fixed the terms and conditions of said sale. Sections 3 and 4 of said act set out the conditions of the sale, as follows:

"Be it further enacted, etc., That the said lands so conveyed to the City of Shreveport shall be used by it as a reservoir or storing basin for water to be used by said city for the purpose of supplying itself and its citizens with a good and wholesome supply of water, and should the said City of Shreveport fail to utilize the said bed of said lake for said purpose within ten years from the date of the passage of this Act or afterward should ever cease to utilize it for said purpose, then the said land shall revert back and become the property of the State of Louisiana, subject to the repayment to the City of Shreveport of the purchase price but without any interest.

"Be it further enacted, etc., That the City of Shreveport in the protection and conservation of its water supply is hereby granted full and plenary power over the said lake and may make such rules and regulations for the government thereof as its City Council may from time to time determine, and may enforce such rules and regulations by fine or imprisonment as is now provided for the enforcement of its ordinances under its charter and amendments thereto."

Act No. 149 of 1920 amended section 3 of Act No. 31 of 1910, as follows:

"Section 3. Be it further enacted, etc., That in order to protect the public health, said lands so conveyed to the City of Shreveport shall be used by it as a reservoir or storage basin for water to be used by said City and the inhabitants thereof, for the purpose of supplying said City, its citizens and other persons visiting said City, with a good and wholesome supply of water, and should the said City of Shreveport fail to utilize the said bed of said lake for said purposes, on or before July 1, 1926, or afterwards should ever cease to utilize it for said purposes,

then the said land shall revert back and become the property of the State of Louisiana, subject to the repayment to the City of Shreveport of the purchase price, but without any interest."

On January 12, 1926, an ordinance designated as Ordinance No. 200 of 1925, entitled "Cross Lake Ordinance," was passed. Section 3 of that ordinance reads as follows:

"Section 3. Be it further ordained, etc., That the Department of Public Utilities shall have the right to employ one or more inspectors, for the purpose of reporting any and all violations of the city ordinances to the Department of Public Safety and to call upon said department and the City Board of Health for the enforcement of any and all ordinances of the city for the protection of Cross Lake Water Reservoir from pollution and contamination and the City Board of Health is likewise granted the same power designated herein, for the purpose of seeing that the water supply of the City of Shreveport shall be kept free of pollution and contamination at all times. The Department of Public Utilities shall have full supervision and control of all improvements and developments on the Cross Lake Water Reservoir and within the contour line below the 172 foot mean gulf level, the same as over any other property belonging to the Water Works Department, the same to be provided for out of its own revenues, unless otherwise provided by the City Council. No permits shall be issued that contravenes the provisions of this ordinance."

Act No. 39 of 1926 authorized the city of Shreveport to exercise certain regulations over Cross Lake, in the following language:

"Section 1. Be it enacted by the Legislature of Louisiana, That the City of Shreveport is hereby granted full power and authority to adopt and enforce all needful police and sanitary ordinances and regulations for the protection of the bed and waters of Cross Lake purchased from the State of Louisiana for a water supply and now in use as such from pollution and contamination from any source and is likewise granted similar power and control over the area surrounding said lake for a distance of five thousand feet from the Meander Contour Line, which extends to the 172 foot mean gulf level as well as over the streams and tributaries of said lake, so as to prevent its pollution, contamination or destruction by salt water, refuse, filth, or from any other cause that would in any manner whatsoever endanger or render harmful or unsanitary the use of the waters of the Lake by the citizens of the City of Shreveport. That the City shall have the right and authority through its Board of Health, Public Safety Department, Public Utilities Department, or otherwise, to inspect all of said property and the drainage area of said Cross Lake and to enforce its ordinances

and regulations by fine or imprisonment through the proper Courts of the State of Louisiana."

In the year 1932, an ordinance was prepared by the mayor and defendant herein, George W. Hardy, and presented to the council for adoption, entitled, "An Ordinance to Formally Define, Determine and Assign the Powers and Duties to be Performed by Each of the Five Named Departments of the City Government under the Provisions of Law." Section 2 of said ordinance, which is No. 39 of 1932, assigns the powers and duties of the mayor as follows:

"The Mayor shall be Superintendent of the Department of Public Affairs, of Public Education, of the Legal Department, of the Health Department, of Public Property, the Municipal Library, the Municipal Auditorium, the Department of Conservation and enforcement on Cross Lake and the Department of Public Recreation. He shall make rules and fix policies for the proper conduct of all said Departments."

Section 5 of said ordinance assigns the powers and duties of the commissioner of public utilities as follows:

"That the Superintendent of the Department of Public Utilities shall be Superintendent of all Public Utilities, and shall have supervision over the following sub-departments: Cemeteries, Plumbing, Electrical, Street Lighting, Water and Sewerage, and the City Water Supply. He shall formulate general rules and policies for the proper conduct of these subordinate departments and communicate the same to the heads of all subordinate departments."

The council, by a vote of four to one, rejected the ordinance. The electorate of the city of Shreveport, availing themselves of a right the mayor claims they had, under section 14 of Act No. 302 of 1910, submitted to the council the ordinance by petition signed by the electors of the city in number to the percentage required by said act, and the ordinance was submitted to the people by referendum, to be voted on September 13, 1932. On that date a majority in number cast their votes in favor of the ordinance and the council promulgated the return, in accordance with the provisions of law.

On September 30, 1932, the mayor of the city of Shreveport, George W. Hardy, defendant herein, addressed the following letter to C. B. Dickson, plaintiff herein, and commissioner of public utilities:

"Honorable C. B. Dickson,
"Commissioner of Public Utilities,
"Shreveport, La.
"Dear Commissioner:
"By authority of ordinance No. 39 of 1932 passed by vote of the qualified electors of the City of Shreveport, the Mayor is designated as Superintendent of the Department of Conservation and Enforcement on Cross Lake. Under this provision he is authorized to make rules and fix policies for the proper conduct of said Department and to appoint the Superintendent of Conservation and Enforcement on Cross Lake.

"Under this authority it is my intention to assume the duties imposed upon me with reference to the supervision of Cross Lake on October 15th.

"On or before that date I will present detailed plans for the approval of the Council. Meanwhile you are advised that effective October 15th the services of those employees of your Department who have been charged with these duties will no longer be necessary under your supervision.

"I plan to place the administration of these matters under the Department of Health and all employees charged with the performance of necessary duties under this provision will hereafter come under that Department.

"In further connection with this matter you will please give me a list of all boats and other city property presently in charge of your Department which are used for the purpose of patrolling Cross Lake. On or before October 15th I will advise you of the name of the Superintendent of Conservation and Enforcement on Cross Lake, who will be authorized to receive this property from you and receipt for same.

"Assuring you in advance of my appreciation of such cooperation and assistance as you may be able to give me in future and thanking you for your immediate advice with reference to the above matters, I am

"Yours very truly, George W. Hardy, Jr.,
"Mayor.

"CC—Hon. John McW. Ford,
"Hon. T. C. Dawkins,
"Hon. Chas. D. Evans,
"Hon. A. M. Pyburn."

On October 4, 1932, plaintiff instituted the present suit, the petition and prayer of which are as follows:

"The petition of C. Bickham Dickson, a resident of Caddo Parish, with respect represents:

"1. That petitioner is a citizen, taxpayer and duly qualified elector of the City of Shreveport, having heretofore been elected to the office of Commissioner of Public Utilities of the City of Shreveport, which he now occupies.

"2. That on September 13, 1932, there was submitted to the electorate of the City of Shreveport under the purported authority of Section 14 of Act 302 of 1910, the proposition to vote for or against the adoption of an ordinance styled: 'An Ordinance to formally define determine and assign the powers and duties to be performed by each of the five named departments of the city government under the provisions of law,' a majority of persons vot-

ing at such election voting in favor of the adoption of the ordinance, which had previously been presented to the City Council of the City of Shreveport and its passage there defeated by vote of four to one; that said ordinance, a copy of which is attached hereto and made part hereof, has been declared adopted and is referred to as Ordinance No. 39 of 1932.

"3. That the Ordinance No. 39 of 1932 purports to create a department styled the 'Department of Conservation and Enforcement on Cross Lake' and an office described therein as 'Superintendent of Conservation and Enforcement on Cross Lake' to be elected by the Council upon the nomination of the Mayor, which department and office are by the provisions of the ordinance placed under the supervision and control of the Mayor.

"4. That Cross Lake is the source of the water supply of the City of Shreveport basicly essential to the water system therein, the supervision and control of which system, including all things properly related thereto, were prior to the purported Ordinance No. 39 assigned to the Department of Public Utilities as the appropriate department therefor, jurisdiction and control over which, including the supervision of Cross Lake necessary to the maintenance of an adequate supply of pure water therefrom was vested in petitioner as Commissioner of Public Utilities.

"5. That George W. Hardy, Jr., Mayor of the City of Shreveport, pretending to act under the authority of the ordinance described herein, has by letter attached hereto and made part hereof, notified petitioner that he will on October 15th, 1932, assume supervision of Cross Lake legally vested in petitioner; and that after such date he will through a Superintendent of Conservation to be nominated by him take charge physically of such work and the property of the City upon the Lake, supervision of all which is legally and properly vested in petitioner as Commissioner of Public Utilities and exercised by him as such.

"6. That the action threatened by the Mayor will for the reasons hereinafter set forth constitute an unlawful and illegal usurpation of the authority legally vested in petitioner as Commissioner of Public Utilities, which is now and has heretofore at all times been exercised by him; that George W. Hardy, Mayor, will attempt the course of action indicated unless restrained by the decree of this Court."

"8. That Ordinance 39 of 1932, in so far as it purports to create a Department of Conservation and Enforcement on Cross Lake, the office of Superintendent of Conservation and Enforcement on Cross Lake and to place the supervision thereof under the control of the Mayor is illegal and void for the following reasons:

"(a) That Act 302 of the Louisiana Legislature of the year 1910 providing for the establishment of a commission form of government for municipalities, which form of government as provided for in that statute has been adopted in the City of Shreveport delegates legislative authority to create municipal offices only to the City Council, in whose discretion alone is vested the right to create such offices as shall in the judgment of the Mayor and Councilmen be necessary to the proper and efficient conduct of the affairs of the City; that such authority is not delegated to the electorate and can not be exercised by plebiscite.

"(b) That Act 302 of 1910 requires that powers and duties of the municipal government shall be distributed among five departments and shall be assigned to appropriate departments; that such provision is mandatory and that the supervision of Cross Lake, the source of water supply of the City of Shreveport, and the control of employees and property necessary therefor can be appropriately assigned only to the Department of Public Utilities.

"(c) That the authority which can be delegated to the Mayor of Shreveport is limited by the provisions of Act 302 of 1910 to the superintendence of the departments of public affairs and education; and the assignment to the Mayor of the supervision of Cross Lake as provided for by Ordinance No. 39 is not appropriate to the functions which can be legally exercised by him.

"9. That petitioner will be irreparably injured in his capacity as Commissioner of Public Utilities and as a taxpayer and elector of the City of Shreveport by the accomplishment of the actions threatened by the Mayor of the City of Shreveport set forth herein; that such actions will constitute an illegal usurpation of authority legally vested in the Commissioner of Public Utilities of the City and will accomplish an illegal and substantial alteration of the functions of government of the municipality as provided for by the laws of the state.

"10. That petitioner is without adequate remedy at law and that his rights in the capacity set forth can be protected only by an injunction to be issued by this Honorable Court prohibiting the said George W. Hardy, Jr., Mayor of Shreveport, from proceeding to assume supervision of Cross Lake and nominating a superintendent of Conservation therefor; and further from interfering in any manner, directly or indirectly with the control and supervision of Cross Lake as the same is now and was vested in petitioner as Commissioner of Public Utilities prior to the purported adoption of Ordinance 39 of 1932.

"Wherefore, petitioner prays that George W. Hardy, Jr., Mayor of Shreveport, be duly cited to answer hereto; that a rule be issued by this Honorable Court requiring the said George W. Hardy, Jr., to show cause at a

time and place to be fixed by this Honorable Court why Ordinance No. 39 of 1932 of the City of Shreveport, in so far as it purports to create a Department of Conservation and Enforcement on Cross Lake, and in so far as it purports to place the supervision thereof under the control of the Mayor of Shreveport, should not be declared illegal and void and why he, George W. Hardy, Jr., should not be enjoined, restrained and prohibited from proceeding to assume supervision of Cross Lake and to nominate a superintendent of Conservation therefor; and further to show cause why he should not be enjoined, restrained and prohibited from interfering in any manner, directly or indirectly, with the control and supervision of Cross Lake as the same is now and was prior to the purported adoption of Ordinance No. 39 of 1932 vested in petitioner as Commissioner of Public Utilities; that upon the hearing of such rule the aforesaid George W. Hardy, Jr., be enjoined from such interference pending the final determination of this cause.

"Petitioner further prays that after all legal delays and hearing had the aforesaid temporary injunction be made permanent and that your petitioner do have and recover judgment against the said George W. Hardy, Jr., permanently enjoining him from interfering with the supervision of petitioner in the respects hereinabove set forth and accomplishing the acts complained of.

"Petitioner further prays for all orders necessary, general and equitable relief."

And attached to the petition a letter from defendant to plaintiff, of date September 30, 1932, and a copy of the ordinance designated as No. 39 of 1932.

Defendant was ruled to show cause on the 11th day of October, 1932, why temporary injunction should not issue, as prayed for, on which date plaintiff filed an amended petition wherein he amends paragraph 8 of the original petition, to read as follows:

"8. That Ordinance 39 of 1932, in so far as it purports to create a Department of Conservation and Enforcement on Cross Lake, the office of Superintendent of Conservation and Enforcement on Cross Lake and to place the supervision thereof under the control of the Mayor is illegal and void for the following reasons:

"(a) That Act 302 of the Louisiana Legislature of the year 1910 providing for the establishment of a commission form of government for municipalities, which form of government as provided for in that statute has been adopted in the City of Shreveport establishes five departments into which the powers and duties of municipal government are distributed; and that other offices are expressly limited to City Attorney, Secretary-Treasurer, Tax Collector, etc., and other similar offices; that the Council could not nor could the electorate create a Department of Conservation and Enforcement on Cross Lake, nor the office of Superintendent of Conservation and Enforcement on Cross Lake.

"(b) That under the provisions of Act 302 of 1910 the municipal government is divided into five departments to which must be appropriately assigned all powers and duties of government; that the right of the Council to determine powers and duties is vested solely to carry out the legislative purpose and is restricted to administrative affairs within the separate departments; that the action of the Council under such administrative power is not subject to the referendum provided for by Act No. 302 of 1910.

"(c) That Act 302 of 1910 delegates authority to create municipal offices only to the City Council, in whose discretion alone is vested the right to create such offices as shall in the judgment of the Mayor and Councilmen be necessary to the proper and efficient conduct of the affairs of the City; that such authority is not delegated to the electorate and cannot be exercised by plebiscite.

"(d) That Act 302 of 1910 requires that powers and duties of the municipal government shall be distributed among five departments and shall be assigned to appropriate departments; that such provision is mandatory and that the supervision of Cross Lake, the source of water supply of the City of Shreveport, and the control of employees and property necessary therefor can be appropriately assigned only to the Department of Public Utilities.

"(e) That the authority which can be delegated to the Mayor of Shreveport is limited by the provisions of Act 302 of 1910 to the superintendence of the departments of Public Affairs and Education; and the assignment to the Mayor of the supervision of Cross Lake as provided for by Ordinance No. 39 is not appropriate to the functions which can be legally exercised by him."

Defendant then filed an exception of no cause of action, which was referred to the merits, then answered as follows:

"Now comes George W. Hardy, Jr., Mayor of the City of Shreveport, made respondent herein, and reserving the benefit of the exception of no cause or right of action heretofore filed, and specifically denying all of the allegations of plaintiff's original and amended petitions, that are not hereinafter admitted, for answer to plaintiff's original and amended petitions and rule to show cause shows the Court:

"1. Article One is admitted.

"2. Article Two is admitted. Except that it is denied that the proposition to vote on the ordinance was submitted to the electorate under the purported authority of any law or statute. In this connection respondent shows that said proposition was submitted to the.

electorate under the valid and legal authority of Section 14 of Act No. 302 of 1910.

"3. Article 3 is admitted, except that part of the allegation which alleges that ordinance No. 39 of 1932, purports to create a department. In this connection respondent shows that ordinance No. 39 of 1932 did in law and in fact create a department styled the Department of Conservation and Enforcement on Cross Lake and an office described therein as 'Superintendent of Conservation and Enforcement on Cross Lake' to be elected by the Council upon the nomination of the Mayor, as set forth in Article 3 of the petition.

"4. Article 4 is denied as written. However, it is admitted that Cross Lake as the source of the water supply of the City of Shreveport is essential to the water system therein. In this connection respondent avers that Cross Lake is used by the citizens of Shreveport for purposes other than that of the water supply, to-wit: Fishing, boating and other types of recreation. Prior to the adoption of Ordinance No. 39 of 1932, the general supervision and control of Cross Lake and the inspection of said lake and the drainage area contiguous thereto were vested in the Public Safety Department, the Public Utilities Department and in the Board of Health which is and has been for many years under the supervision of the Mayor, by virtue of the provisions of Act No. 39 of 1932. Respondent further shows that all ordinances heretofore adopted by the City Council with reference to the control and authority of the city government over the waters of Cross Lake and its drainage area have had for their intent and purpose the protection of said waters from contamination and pollution, the conservation of fish and game in and around the waters of Cross Lake, and the preservation of the general peace and safety of the people of the City of Shreveport in their use and enjoyment of said body of water and its environs.

"5. Article 5 is denied as written. However, respondent admits that he, as Mayor of the City of Shreveport, acting under the authority of Ordinance No. 39 of 1932, did by letter notify petitioner that on October 15th, 1932, he (respondent) would assume supervision of Cross Lake and that after said date, he would through a Superintendent of Conservation to be nominated by him as Mayor, take charge of such work and the property of the city upon the lake.

"6. Article 6 is denied. However, it is admitted that respondent as Mayor will pursue the course of action indicated in his letter, which has been referred to in the petition, unless restrained by decree of Court."

"8. Article 8 of the original petition and the amendment of said article as set forth in the supplemental and amended petition are denied.

"9. Article 9 is denied.

"10. Article 10 is denied.

"11. Further answering, respondent shows that the letter written by him to the petitioner referred to in Article 5 of the petition was and is based upon the authority of Ordinance No. 39 of 1932, which is a legal and valid ordinance legally and validly adopted by the electorate of the City of Shreveport, pursuant to the provisions of Act No. 302 of 1910.

"Wherefore, respondent prays that plaintiff's rule be recalled and the suit dismissed at his cost.

"Respondent further prays for all equitable and general relief."

On the issues as made up the case was tried below, and there was judgment for defendant, rejecting the demands of plaintiff; from this judgment plaintiff has appealed. There is no answer to the appeal; therefore, the exception of no cause of action is not before us for consideration, but in this court defendant has filed a motion to dismiss the appeal for the reason that this court is without jurisdiction ratione materiæ to hear and determine the issues in this case. The motion is based on the ground that appellant is seeking to vindicate a political right which concerns the exercise of his power as a governmental official and that appellant has not shown that he has suffered a deprivation of property or civil rights, and therefore the courts are without jurisdiction to hear and determine the case.

The motion to dismiss is not well founded and is overruled under the authority of the following cases: Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L. R. A. 403; Dastugue v. Cohen, 14 La. App. 475, 131 So. 746, and authorities cited; also State ex rel. Trainor v. St. Paul, 111 La. 714, 35 So. 838.

Plaintiff alleged that he was rightfully exercising certain powers and duties as commissioner of public utilities, and that defendant, acting under an ordinance which was illegal, was attempting to take away from his department certain of the powers and duties that rightfully belonged to him, as commissioner of public utilities; that he was entitled to be protected in his right to exercise the alleged powers and duties until the question of who rightfully should exercise those powers and duties was established.

The lower court did not pass upon the right of plaintiff to a temporary injunction, but upon hearing of the rule nisi, passed upon the merits of the case. No objection to the manner in which the case was disposed of below has been raised here. The case in this court is treated by all parties as though it was regularly disposed of below and we will so treat it.

### Opinion on the Merits.

Plaintiff alleged that the ordinance, No. 39 of 1932, referred to as a "power defining ordinance," is illegal for the following reasons:

"(b) The right to determine and define powers under Act 302 of 1910, is vested in the City Council solely to carry out the legislative purpose as announced in the statute, is an administrative matter and not subject to referendum, as provided for in Act 302 of 1910."

Generally, the power of referendum was intended to apply solely to the legislative powers of the city, and, in the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum applies only to the legislative powers of a city and not to the administrative and executive powers. Act No. 302 of 1910 does not contain a clear declaration to the contrary. It is directed at supposed evils of legislation alone. To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to a successful administration of the business affairs of the city. In many instances it would entirely prevent the exercise of executive or administrative powers necessary to carry out the act determined upon by the legislative department. Hopping v. Council of City of Richmond, 170 Cal. 605, 150 P. 977; McKevitt v. City of Sacramento, 55 Cal. App. 117, 203 P. 132; People ex rel. Austin v. Graham, 70 Colo. 509, 203 P. 277; Erwin v. Mayor of Jersey City, 60 N. J. Law, 141, 37 A. 732, 64 Am. St. Rep. 584; Chase v. Kalber, 28 Cal. App. 561, 153 P. 397; Campbell v. City of Eugene, 116 Or. 264, 240 P. 418; McQuillin, Municipal Corporations (2d Ed.) vol. 1, p. 907, par. 366; Dooling v. City Council of City of Fitchburg, 242 Mass. 599, 136 N. E. 616; Murphy v. Gilman, 204 Iowa, 58, 214 N. W. 679; Brazell v. Zeigler, 26 Okl. 826, 110 P. 1052; Wilkinson v. Edwards, 305 Mo. 431, 266 S. W. 127; Oakman v. City of Eveleth, 163 Minn. 100, 203 N. W. 514; Meade v. Dane County, 155 Wis. 632, 145 N. W. 239; Dallas Ry. Co. v. Geller, 114 Tex. 484, 271 S. W. 1106.

Executive or administrative matters are not subject to referendum, and not all legislative matters. See note L. R. A. 1917B, 22.

"While, as is shown below, the initiative and referendum applies only to legislative matters as distinguished from administrative or executive, not all legislative matters are within its scope. Thus, although a resolution of the board of trustees of a municipality, establishing the grades of certain streets and avenues thereof, is legislative in character, it has been held not subject to a referendum, on the theory that the inevitable effect of applying the referendum to such a matter would be greatly to impair or wholly destroy the efficacy of the statutes providing for the establishment and improvement of streets, and also upon the theory that such an improvement is of a special and local nature, in which only those interested were intended to have a voice."

We therefore construe section 14 of Act 302 of 1910, reading as follows: "That any proposed ordinance may be submitted to the council, * * *" to mean any proposed ordinance of a legislative character and not to include ordinances or resolutions which include only the exercise of executive or administrative powers. Murphy v. Gilman, 204 Iowa, 58, 214 N. W. 679, and cases cited therein.

Acts constituting a declaration of public purpose, and making provisions for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative powers. Acts which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence. McKevitt et al. v. City of Sacramento, 55 Cal. App. 117, 203 P. 132.

Ordinance 39 of 1932, under attack in this suit, was for the purpose of carrying out the legislative policies already declared by Act No. 302 of 1910, and is an administrative power exercised by ordinance. Act No. 302 of 1910 definitely established a form of government for cities under the commission plan. It specifically declares that the powers and duties under commission form of government shall be distributed into and among five departments, as follows:

1. Department of public affairs and education;

2. Department of accounts and finances;

3. Department of public safety;

4. Department of public utilities;

5. Department of streets and parks.

It then declared that the council shall determine the powers and duties to be performed by and assigned them to the appropriate department. The lawmakers declared that the council *shall*, not *may*. It is an express declaration and is mandatory. It was the duty of the council to assign the powers and duties to be performed by each department. They were not given the right to decide whether or not they would assign the powers and duties to be performed by each department, but were obliged to do so. The assigning of the powers and duties to be performed by each of the five departments was necessary to carry out the legislative policies and purposes declared by act No. 302 of 1910, and devolved upon the council by the very act of the Legislature that authorized the existence of a commission form of government in the city of Shreveport. Ordinance No. 39 of 1932 pertains solely to facilitating the performance of the business of the city and involves only the proprietary and business func-

tions of the city. It is not a declaration of public purpose and is purely an administrative matter, relating to daily administration of municipal affairs.

In Long v. City of Portland, 53 Or. 92, on page 100, 98 P. 149, 1111, 1112, the court said:

"Legislation as here contemplated must be considered in the sense of general laws, namely, rules of civil conduct prescribed by the lawmaking power and of general application."

██ The assigning of the powers and duties to the different departments was originally done by resolution on November 14, 1910. It could legally and properly be done by resolution, instead of ordinance, and this in itself is a test of whether the act of defining the powers and duties is administrative or legislative, for any matter that is legislative must be enacted by ordinance. It must be remembered that Act No. 302 of 1910 only gives the right of referendum to ordinances, and not to resolutions or motions. The mere fact that what could have been done by resolution was attempted to be done by ordinance does not change the act from an administrative act to a legislative one, or change the right of referendum. Murphy v. Gilman, 204 Iowa, 58, 214 N. W. 679; Campbell v. City of Eugene, 116 Or. 264, 240 P. 418; Hopping v. Council of City of Richmond, 170 Cal. 605, 150 P. 977.

██ The fact is that it could have been done by resolution and is therefore not a legislative act and not subject to referendum. McQuillin, Municipal Corporations (2d Ed.) vol. 2, pp. 523, 524, par. 663; People ex rel. v. Mount, 186 Ill. 560, 58 N. E. 360; C. & N. P. R. R. v. Chicago, 174 Ill. 439, 51 N. E. 596; Village of Altamont v. B. & O. S. W. R. R., 184 Ill. 47, 56 N. E. 340; Baltimore & O. S. W. Ry. Co. v. Village of Altamont, 84 Ill. App. 274; Nazworthy v. City of Sullivan, 55 Ill. App. 48, 51; C. & N. P. Ry. Co. v. Chicago, 174 Ill. 439, 51 N. E. 596; Campbell v. Eugene, supra; City of Alma v. Guaranty Savings Bank, 60 F. 203, 8 C. C. A. 504; Blanchard v. Bissell, 11 Ohio St. 96, 103; State v. City of Bayonne, 35 N. J. L. 335; Grimmell v. Des Moines, 57 Iowa, 144, 10 N. W. 330; Weilage v. City of Crete, 110 Neb. 544, 194 N. W. 437; McGavock v. City of Omaha, 40 Neb. 64, 58 N. W. 543.

If the electorate of the city had the right of referendum on an ordinance or resolution assigning the powers and duties of the different departments of the city government, they would likewise have the right to propose an ordinance to repeal any resolution or ordinance assigning the duties and powers and could thereby prevent the council from assigning the powers and duties in any instance, and by the exercise of the right of referendum, thereby nullify the mandatory provision of Act No. 302 of 1910. Certainly the referendum was not intended to be used for such a purpose. It would amount to preventing the council from exercising power and duties already provided for by legislative act, and would prevent the exercise of executive and administrative powers necessary to carry out the act determined upon by the Legislature and made mandatory in authorizing the existence of a commission form of government for the city of Shreveport. The Supreme Court of this state, in the case of Dawkins v. Bazer, 172 La. 327, 134 So. 238, 242, said:

"It was in obedience to the mandatory terms of that section of the law that the city council, by the resolution of the 14th of November, 1910, assigned the superintendence of the police department to the superintendent of the department of public safety."

Our finding on this question will alone dispose of this case, but due to the fact that the case involves other questions of considerable public interest, we prefer to pass on them.

██ The next attack on the ordinance is as follows:

"(c) Act 302 of 1910 vests in the City Council alone the discretion to create offices necessary for the efficient conduct of the affairs of the city, which discretion cannot be delegated or exercised by plebiscite."

Section 5 of Act 302 of 1910, provides that the council shall at its first meeting, or as soon as practicable thereafter, elect by a majority vote the following officers: City attorney, secretary-treasurer, tax collector, etc., and such other officers and assistants as shall in the judgment of the mayor and councilmen be necessary to the proper and efficient conduct of the affairs of the city, and that this act shall prevail over any provisions of the charter of cities coming under the provisions of the act. It further provides that any officer or assistant elected or appointed by the council may be removed from office at any time by the vote of a majority of the members of the council, except when otherwise provided by the act.

This is an express mandate to the mayor and council to elect the necessary officers for the proper and efficient conduct of the affairs of the city. The text of the act leaves no doubt in our mind that the Legislature intended that this mandatory provision be carried out, for it actually fixed the time when it should be done, at the first meeting of the council or as soon thereafter as practicable. If it was necessary to elect officers not named in the act, as a superintendent of conservation and enforcement on Cross Lake, and to do so was not violative of Act No. 302 of 1910, then the mayor and council could create the office and elect the superintendent. This power is in the form of an express mandate and cannot be delegated by the mayor and council, nor is it subject to a plebiscite. The council cannot delegate that authority to the mayor alone, neither can it delegate it to any other member of the council. When a subordinate office is created and the officer elected

to fill the office, it must be done by the mayor and council. State ex rel. Thurmond v. City of Shreveport, 124 La. 178, 50 So. 3.

■ It therefore follows that the authority to create a department of conservation and enforcement on Cross Lake could not be delegated by the council to the people under the referendum. Furthermore, the creation of such a department, if allowed by law, was strictly an administrative matter, the same as creating an assistant city attorney, or any other officer necessary to the efficient conduct of the business of the city, and was not subject to referendum. The act gives the right to the council to create the necessary subordinate offices and necessarily carries with it the right to abolish the offices so created, when such offices become unnecessary. This administrative power which is given to the council by the act would be annulled if the electorate by referendum were allowed to create subordinate offices, as the act specifically declares that any ordinance voted in referendum election cannot be repealed, except by vote in a referendum election.

■ We therefore find that Ordinance 39 of 1932, of the city of Shreveport, passed by referendum vote, is illegal and void wherein it created the subordinate office of superintendent of conservation and enforcement on Cross Lake.

The next two attacks on the ordinance are as follows:

"(d) The Act of 1910 requires the functions of municipal government to be appropriately assigned among five departments and the supervision of Cross Lake, as a source of water supply, cannot be appropriately assigned to a department other than the Department of Public Utilities"; and

"(e) The supervision of Cross Lake cannot, under the Act of 1910, be appropriately assigned to the Mayor of the City, whose authority is restricted by the Act of 1910 to Public Affairs and Education."

Our finding under attack (d) necessarily disposes of the other attack. We will therefore treat them together.

■ Act No. 302 of 1910, provides that the council shall determine the powers and duties to be permitted and assign them to the appropriate department. One of the departments is that of public utilities, and it cannot be denied that the appropriate department to assign the powers and duties pertaining to any public utility of the city of Shreveport is the department of public utilities. It cannot be denied that the system of furnishing water to the inhabitants of the city is a public utility, and therefore the powers and duties connected with the water system of the city must be assigned to that department, as provided by Act. No. 302 of 1910. This being true, a determination of whether the supply of water is a component part of the water system will determine the question raised. To ask the question is to answer it. The maintaining of a sufficient supply of pure water to distribute to the inhabitants of the city is the most important part of the entire water system. Whether the supply is secured from Cross Lake, outside the city limits, or from deep wells in the city limits, is immaterial. It is still a major part of the system. To divorce this part of the water system from the distributing system would be to divide the water system into two separate parts, and to place the water supply under the superintendence of a department other than the department of public utilities would amount to taking from the department of public utilities, the commissioner of which is made superintendent of that department, a part of the powers and duties appropriately belonging to that department. If one part of the powers and duties appropriately belonging to that department could be taken away from it and placed in some other department, then the entire water system could be taken from under the superintendence of the department of public utilities and placed under another department. This is not even contended for by appellee.

■ The one most important duty the commissioner of public utilities has to perform is not only to see that the inhabitants of the city are supplied with water, but to know that they are supplied with pure, wholesome water and in the quantity necessary for their needs. To take from him and his department the superintendence of Cross Lake, the only source of supply of water for the city, would prevent him from performing the most important duty of his office and of his department. The superintendence of Cross Lake necessarily must be in the commissioner of public utilities, in order for him to properly perform the duties the law requires of him.

Appellee, in brief, contends that it is not mandatory that the supervision of Cross Lake be assigned to the department of public utilities merely because the city charter authorized the duties of the municipal government assigned to appropriate departments, and that the superintendence of the water supply and drainage area can be and is an appropriate function of the board of health. He further contends that Act No. 39 of 1926 gives to the city the right and authority to inspect all of Cross Lake and the drainage area contiguous thereto, through the board of health, public safety department, public utilities department, or otherwise. He further contends that the evidence shows that the jurisdiction and control of Cross Lake has not been in the department of public utilities alone, but in the department of public safety, department of public utilities, and department of health, which is under the mayor. He further contends that the testimony shows that the purpose of the inspection and supervision of

Cross Lake, its tributaries and surrounding drainage area, was directed at the preservation of the purity of the water supply and the enforcement of laws protecting fish and game.

The acts of the Legislature quoted in stating the case provide for the transfer of the basin of Cross Lake to the city of Shreveport and define the purposes for which it is to be used and the conditions. The purpose for which it is to be used is fixed in Act No. 31 of 1910. The act declares it shall be used as a reservoir, or storage basin, for water to be used by the city for the purpose of supplying itself and its citizens with a good, wholesome supply of water, and provides that if the city should cease to use it for that purpose, that the land should revert back and become the property of the state.

Act No. 149 of 1920 merely extends the time within which the city might avail itself of the use of the lake and reiterates the purposes and conditions of the grant.

Section 4 of Act No. 31 of 1910 gives to the city full and plenary powers over the lake in the protection and conservation of its water supply, and Act No. 39 of 1926 gives to the city the right to enforce all needful ordinances and regulations for the protection of the bed and water of Cross Lake for a water supply and to prevent any act that would in any manner endanger or render harmful or unsanitary the use of the water of the lake by the citizens of the city of Shreveport.

█ The sole delegation of power to the city to make laws and enforce them on Cross Lake, which is outside the city limits, is given it by the acts above enumerated. The city can only exercise those powers outside the territorial limits of the city that are expressly granted to it and which are necessarily incidental to such expressed grant. McQuillin, Municipal Corporations (2d Ed.) vol. 1, p. 703, par. 279, citing cases from Alabama, Colorado, Georgia, Illinois, Kentucky, Maryland, Michigan, Minnesota, Oregon, Pennsylvania, South Carolina, Texas, West Virginia, and Virginia.

█ It therefore follows that the city of Shreveport can only make such ordinances and enforce them on Cross Lake as are needful for the protection of the waters of the lake from pollution and contamination, and that are necessary to maintain a sufficient supply of water, such as to prevent the destruction of the dike or the damming up of the tributaries within the boundaries of the grant, etc. Its authority extends no farther. It therefore follows that the jurisdiction of the council to enforce regulations upon Cross Lake is incidental to the satisfactory functioning of the municipal water system; that the lake is the only source of water supply and is the most important part of the water system and cannot be divorced from it.

█ █ It is certainly not one of the ex-clusive appropriate functions of the board of health to see that the supply of water is sufficient in quantity to provide for the needs of the citizens of the city, and not one of its functions to protect the dike from being destroyed. This is an appropriate function of the department of public utilities. Act No. 39 of 1926 does not give to the board of health the exclusive right of superintendency over Cross Lake nor authorize the council to give it that right. It merely provides that the different departments may exercise on Cross Lake the duties necessarily belonging to each department. It in no way takes from the superintendent of the department of public utilities the superintendency of Cross Lake, nor does it authorize the council to take it away from that department. The enforcement of the laws on Cross Lake are no different from what they would be in any other department. The board of health has authority to exercise its powers and duties to see that the jail is kept sanitary, yet the control of the jail is certainly under the control of the commissioner of public safety. It would likewise have the authority to inspect the city hall, the fire department, department of public utilities, or any other department of the city; that in itself would not give it the control and superintendency of these different departments. Likewise, the department of public safety has the authority, through its officers, to arrest a law violator anywhere in the city, or on Cross Lake, which belongs to the city, or in any of the departments of the city; that in itself does not give to his department the superintendency of any other department. There are certain duties appropriate to each department of the city government that necessarily overlap other department duties. The duties of the public safety commissioner necessarily to some extent overlap every other department in his enforcement of the city laws, and the duties of the mayor in his department, as superintendent of the health board and of public affairs, necessarily to some extent overlap all the other departments. These matters are usually worked out by proper cooperation of the heads of the different departments, and in no manner alter the appropriate duties to be assigned to each department.

The question of the duties of the superintendent and enforcement officer on Cross Lake, as to the enforcement of the game and fish laws, we will pass as unnecessary to be discussed, due to our finding that the city of Shreveport can only make such ordinances and enforce them on Cross Lake as are needful for the protection of the waters of the lake from pollution and contamination, and that are necessary to maintain a sufficient quantity of water supply.

The Supreme Court of this state, in the case of Dawkins v. Bazer, 172 La. 327, 134 So. 238, 242, cited with approval the case of Oliver v.

Daly, 103 N. J. Law, 52, 134 A. 870, and quoted therefrom. It is urged by appellee that reference to this case was obiter dictum. It may have been under the issues in the Dawkins-Bazer Case, but it is clear that the Supreme Court of this state approved of the principle of law laid down in that case, and the finding in that case is very applicable here. The Supreme Court, in quoting from this case, said:

"Our opinion is that the city council could not, without doing violence to the requirements of section 4 of Act 302 of 1910, take away from the superintendent of the department of public safety his authority as superintendent of the police department. It was in obedience to the mandatory terms of that section of the law that the city council, by the resolution of the 14th of November, 1910, assigned the superintendence of the police department to the superintendent of the department of public safety—which was, in truth, the only 'appropriate department' to which the police department could be assigned. An interesting opinion on this subject is to be found in Oliver v. Daly, 103 N. J. Law, 52, 134 A. 870, 872, rendered by the Court of Errors and Appeals of New Jersey, in October, 1926. The city of Bayonne, in that state, was governed by a statute called the Walsh Act (P. L. N. J. 1911, p. 462), establishing a commission form of government, similar to that established by Act 302 of 1910. Commissioner Talbot was mayor and, ex officio, director of the department of public affairs; Commissioner Hersford was director of the department of revenue and finance: Commissioner O'Connell was director of the department of public safety; Commissioner Axford was director of the department of streets and public improvements; and Commissioner Daly was director of the department of parks and public property. By a vote of a majority of the commissioners, Mayor Talbot and Commissioner O'Connell voting in the negative, several resolutions were adopted, undertaking to deprive Mayor Talbot and Commissioner O'Connell of the directorate of several subordinate departments which were appropriate to the departments of which Mayor Talbot and Commissioner O'Connell were, respectively, the directors. Mayor Talbot and Commissioner O'Connell, together with a taxpayer, Mrs. Oliver, sued to annul the resolutions, charging that they were adopted without any intent to benefit the people of the municipality, but in betrayal of the trust imposed upon the commissioners who voted for the resolutions, and for the purpose of punishing the mayor and Commissioner O'Connell for conduct in their respective departments that was in defiance of the wishes of political friends of the members who voted for the resolutions. The Supreme Court considered the charges well founded, and annulled the resolutions. 131 A. 678 [4 N. J. Misc. 80]. An appeal was taken to the Court of Errors and Appeals; and that court found that, although the evidence was sufficient to create a suspicion of the truth of the charges, it was not so convincing as to convict the majority members of the board of commissioners of such grave charges. The court, however, annulled each and every one of the resolutions in so far as they undertook to deprive the mayor and Commissioner O'Connell of their directorate of the subordinate departments which were appropriate to the departments of which they were, respectively, the directors. In the course of its opinion, the court said: 'The statute requires that the municipal powers and duties of this municipality shall be assigned by the board of commissioners to "appropriate departments."' And the court said that any attempt to assign any municipal power otherwise than to the appropriate one of the five departments of the municipal government was 'in violation of the statute, ultra vires, and void.'"

Ordinance No. 39 of 1932, section 2, provides, among other things, that the mayor shall be superintendent of the department of conservation and enforcement on Cross Lake and that he shall make rules and fix policies for the proper conduct of said department. It further provides that a superintendent of conservation and enforcement on Cross Lake shall be elected by the city council, on the nomination of the mayor, and he shall be under the supervision and control of the mayor. It further provides that the superintendent of conservation and enforcement on Cross Lake shall have full charge of the patrolling of Cross Lake and of the enforcement of laws and ordinances with reference thereto which have been or may be adopted by the council.

On September 30, 1932, the mayor, defendant herein, by letter to plaintiff, stated as follows:

."Under this authority, it is my intention to assume the duties imposed upon me with reference to supervision of Cross Lake on October 15th. * * *

"On or before that date, I will present detailed plans for the approval of the council. Meanwhile you are advised, that effective October 15th, the services of those employees of your department who have been charged with these duties will not longer be necessary under your supervision. * * *

"I plan to place the administration of these matters under the Department of Health, and all employees charged with the performance of necessary duties under this provision will hereafter come under that department."

On trial of the case, the mayor testified that he wrote the letter for the purpose as set forth therein and that he intended to do the things stated in the letter, and would do them unless he was enjoined by the court. He further testified that his intended acts would take from the department of public

utilities supervision and enforcement of the ordinances and regulations now existing. It is clear that Ordinance 39 of 1932, and as interpreted by the mayor, and his intended acts, if carried out, as disclosed by his letter and his testimony, would deprive the commissioner of public utilities of entire supervision and control of Cross Lake, the source of the water supply of the city of Shreveport, and a component part of the water system, a public utility belonging to the department of public utilities, and is in direct conflict with the provisions of Act No. 302 of 1910.

We see no necessity for discussing and passing on the other attacks made on the ordinance by plaintiff, that is, that the council was without power to create the department of conservation and enforcement on Cross Lake.

The judgment of the lower court is incorrect and is therefore reversed. The plaintiff is entitled to the relief prayed for; and injunction should have issued, as prayed for, enjoining, restraining, and prohibiting defendant from proceeding to assume supervision of Cross Lake and to nominate a superintendent of conservation and enforcement on Cross Lake; and from interfering with the commissioner of public utilities in exercising the power of superintendence of Cross Lake.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court refusing to issue the injunction in this case be annulled and set aside, and it is now ordered that the injunction issue, as prayed for, enjoining, restraining, and prohibiting defendant, George W. Hardy, Jr., mayor of Shreveport, from proceeding to assume supervision of Cross Lake, and to nominate a superintendent of conservation and enforcement on Cross Lake, and from interfering with the plaintiff, commissioner of public utilities, in exercising the right of superintendence of Cross Lake; and this case remanded to the lower court for that purpose.