O’NIELL, C. J.
 

 The Court of Appeal for the Second Circuit, acting under authority of section 25 of article 7 of the Constitution, has submitted to this court two questions of law, on which the Court of Appeal asks for instruction. The questions are:
 

 1. In whom is vested the power of direction and control of the police department of the city of Shreveport?
 

 2. In whom is vested the authority to appoint the police officers of the city of Shreveport, below the rank of chief of police?
 

 Stated specifically, the question in each instance is whether the authority is vested in the superintendent of public safety, or in the chief of police. - -.
 

 The superintendent of public safety sued, to enjoin the chief of police from interfering with the superintendent’s alleged authority as superintendent of the police department. He alleged in his petition, and the chief of police admitted in his answer, that he (the, chief of police) had announced publicly that he would not obey the orders which had been given to him by the superintendent, or any orders from the superintendent, and had announced publicly that he was at the head of and was directing the police department, and claimed the right to make all appointments of members of the police force.
 

 It is alleged in the plaintiff’s petition, and. admitted in the defendant’s answer, that the plaintiff is the member of the city council who is superintendent of the department of public safety, and that, by an ordinance of the city council, adopted on the 14th of November, 1910, according to the provisions of Act 302 of 1910, p. 512, providing a commission form of government for cities of the size of Shreveport, the police department Of the city was assigned to the department of public safety. The chief of police, however, contends in his answer to the suit that, by effect of Act 187 of 1918, p. 352, placing the police department of Shreveport under civil seyv-, ice, the police department has been placed under the authority and control of the chief of -, police, and that he is thereby given the authority to appoint the members of the police, force, subject, of course, to the rules and requirements of the board of civil service commissioners.
 

 The issue thus tendered was submitted on the pleadings and the ordinances annexed thereto, and the district judge decided in fa-, vor of the chief of police and, refused to issue a writ of injunction. The superintendent of public safety appealed from the decision.;
 
 *332
 
 and the Court of Appeal, as we have said, passed up the question to this court.
 

 The only question to be decided is whether the Civil Service Act, which is Act 187 of 1918, the provisions of which were 'adopted by the city council of Shreveport in 1929, had the effect of amending the act providing for a commission form of government, Act 302 of Í910, so as to take away from the superintendent of public safety his authority as superintendent of the police department, and to confer it upon the chief of police.
 

 Before the commission form of government was adopted for the city of Shreveport, the powers of government and administration were vested in a mayor and fifteen councilrhen, called trustees, under a special charter, Act 158 of 1898, p. 295. The council was required (by section 18 of the act) to appoint the members of the police force, and was required (by section 21) to elect the chief of police, who was called chief lieutenant of police.
 

 Act 302 of 1910 is a general law, applicable to all cities of more than 7,500 inhabitants, except New Orleans, Baton Rouge, Monroe, and Lake Charles. The powers of government and administration are (by section
 
 4
 
 of the act) conferred upon a council composed of the mayor and four councilmen, and are distributed among five departments, namely: (1) Department of public affairs and public education; (2) department of accounts and finances; (3) department of public safety; (4) department of public utilities; and (5) department of streets and parks. The council was required (by section 4 of the act) to determine the powers and duties of each department, “and assign them to the appropriate department.”
 

 Section 5 of the act provides that the may- or shall be superintendent of the department of public affairs and public education; that one councilman shall be superintendent of the department of accounts and finances; that one councilman shall be superintendent of the department of public safety, etc.
 

 On the 14th of November, 1910, the council adopted a resolution, in obedience to sections 4 and 5 of the act, determining the several subordinate departments which each member of the council should be superintendent of. Accordingly, to the superintendent of the department of public safety were assigned the fire department, the police department, and other appropriate subordinate departménts. It is conceded that this ordinance, of the 14th of November, 1910, declaring the superintendent of the department .of public safety to be, ex officio, superintendent of the police department, has never been repealed or amended, unless a repeal or an amendment resulted from the adoption of the Civil Service Law, Act 187 of 1918.
 

 The act of 1918 does not, in terms, or by necessary implication, take away from the superintendent of public safety his authority to appoint the members of the police force, other than the chief of police, or deprive the superintendent of public safety of his superintendence of the police department.
 

 The object expressed in the title of the act of 1918 does not indicate an intention to change in any way the distribution of the powers of government among the five superintendents, respectively, of the five departments. The title of the act is
 

 “To provide a Civil Service for the City of Shreveport; to provide for the organization of a Board of Civil Service Commissioners and to define the authority and duties thereof; to place the Police of Shreveport under the rules of Civil Service and providing methods of selecting and removing employees; to provide penalties for violations hereof and to
 
 *334
 
 repeal all laws or parts of laws inconsistent or in conflict herewith.”
 

 Sections 1 to 27, inclusive, are applicable to the appointees ánd employees in all departments of the city government, excepting certain specified officers and employees. Sections 28 to 32, inclusive, place all officers, clerks, detectives, and patrolmen “holding office or positions on the police force” under the civil service rules and regulations; and these sections of the statute refer specifically to'the police force. Section 33 requires the board of civil service commissioners to formulate rules and regulations for its government, and provides for the appointment of the members of the board, and for the filling of vacancies thereon. Section 34 is the repealing clause, merely repealing “all laws and' parts of laws in conflict herewith.”
 

 The provisions of sections 4 and 5 of Act 302 of 1910, which, in effect, make the superintendent of the department .of public safety, ex officio, superintendent of the police department, are not in conflict or inconsistent with any of the provisions of the Civil Service Act, and therefore were not repealed by the latter act.
 

 Counsel for the chief of police contend— and the district judge in his reasons for judgment maintained — that the provisions of sections 8, 9, 30, 31, and 32 of the Civil Service Act furnish the necessary implication that the intention was to take away from the superintendent of the department of public safety, and to confer upon the chief of police, the superintendence of the police force, with f the authority to appoint the members thereof.
 

 Section 8 of the Civil Service Act, which is applicable not only to the police department but to all other departments, provides merely:
 

 “That the head of the department or office of the City in which a position under the civil service is to be filled, shall notify said Board [of Civil Service Commissioners] of the fact, and said Board shall certify to such department or office a list of all candidates upon the register of the class to which such position belongs, and
 
 said appointing officer
 
 shall fill such position by the appointment of a person on said list, notifying said Board of such appointment, and thereupon the name of such appointee shall be stricken from said list. The said appointment shall be on probation for thirty days, within which time the
 
 appointing officers
 
 may discharge the person appointed, but, if no discharge be made within said period of thirty days then said appointment shall be deemed complete and shall entitle the appointee, unless sooner removed pursuant to law, to hold such position during good behavior. To prevent interruption of the public business or in cases of extreme urgency,
 
 the head of any department may malee temporary appointments
 
 to remain effective not exceeding sixty days, and only until' regular appointments under this act can be made.” (The italics are ours).
 

 These references to “the head of the department or office,” and “said appointing officer,” and the declaration that “the1 head of any department may make temporary’ appointments,” merely indicate that the head of each department is the appointing officer in his department. There is no indication that the chief of police is the appointing officer in the police department.- The police department, which in section 28 is called “the police force,” and in section 32 is called “the Police Force,” is only a subordinate department of the department of public safety, and the superintendent of the department of public safety is the head of that department. By calling the police force the
 
 police department
 
 
 *336
 
 (as in section 3 of the act of 1918), the legislature did not intend to create a
 
 siwth department of government,
 
 separate from or independent of the five general departments into which the government of the city was divided by the act. of 1910, establishing the commission form of government. In State v. Guidry, 142 La. 422, 76 So. 843, it was held that Act 54 of 1914, creating the department of conservation, did not create a fourth department of government, but created merely a subordinate executive or administrative department, within the executive department defined in the Constitution.
 

 ■ Section 9 of the act of 1918 provides for the investigation of charges against employees, viz.:
 

 “That the said Board [of Civil Service Commissioners] shall have power and authority in any and all investigations of charges preferred against any employee of the City of Shreveport, to examine any and all witnesses in behalf of and against such employee, and their conclusions shall be final in the disposition of all such cases. Provided that charges in all cases must be made in writing, presented to the employee accused, and a date shall be set for a hearing of such charges. If said charges are sustained by the Board, their recommendations as to suspension or removal must' accompany their judgment. In all cases, it will become the duty of the appointing officer to suspend any employee pending the hearing of such charges, and in cases where such charges are made against the appointing officer, it shall be the ’duty of the Mayor to suspend such appointing officer. If the charges against the accused employee be not sustained by .the Board, he shall- be reinstated in his office, and shall be entitled to receive the portion of his salary accrued during the term of his suspension, if sustained he shall be discharged or suspended as of the date his first suspension was ordered.”
 

 It is contended, on -behalf of the chief of police, that “the appointing officer,” whose duty it is to suspend an employee pending a hearing of charges preferred against him, cannot be a member of the city council, because, according to section 27 of the statute, the members of the city council are exempted from the provisions of the statute. But the argument is a begging of the question. It is based upon the false premise that section 9 of the act refers only to employees and appointees in the police department; whereas section 9 is made applicable to employees or appointees in any and every department, and therefore makes provision for a ease where charges are preferred against an officer having the power of appointment.
 

 The only power of suspension that is conferred upon the chief of police is conferred by sections 30 and 31 of the statute; which, by referring especially and only to the power of the chief of police in that respect, show very plainly that the general provisions of section 9‘ are not intended to refer to the chief of police as an “appointing officer.”
 

 Section 30 provides that the chief of police shall have the power to suspend, without pay, for a period not exceeding thirty days, any officer or member of the police force for an infraction of the rules of the, department; that the chief of police shall, present the facts in writing to the board of civil service commissioners ; that a file of such charges shall be kept by the secretary of the board', so that the record of any police officer .may be easily ascertained by referring/ to the file; that an officer thus suspended may, if he so desires, petition the board for a trial of the charge.or charges on which .he, wa.s suspended; and that the board shall examine the
 
 *338
 
 same within five days, and, if the action of the chief of police shall not be concurred in by the board, the officer suspended shall be reinstated and reimbursed for such time as he may have lost; provided that no case will be examined by the board where the only complaint is as to the term of suspension unless it exceeds thirty days.
 

 Section 81 also provides
 
 especially
 
 for the power of suspension conferred upon the chief of police; hence the provisions of this section control the general provisions of section 9, as far as the Chief of Police is concerned. Section 31 provides:
 

 “That in cases where it is considered by the-Chief of Police that an officer should be discharged, the said Chief of Police shall present the charges on which, such action is recommended, to the said Board [of Civil Service Commissioners], in writing, and
 
 he may suspend
 
 said officer, pending the hearing of such charges, and the charges against that officer shall be heard, and the Board shall pass judgment thereon
 
 as in other cases."
 
 (The italics are ours.)
 

 It is to be observed that, when the chief of police
 
 recommends
 
 that an officer be discharged, “he
 
 may suspend
 
 said officer, pending the hearing of such charges.” But, when charges are preferred under the provisions of section 9, it is declared: “In all eases,
 
 it will become 'the duty of the appointing officer to suspend
 
 any employee pending the hearing of such charges, and in eases where such charges are made against
 
 the appointing officer,
 
 it will be the duty of the Mayor to suspend such
 
 appointing
 
 officer.” It is plain, therefore, that this designation,
 
 the appointing officer,
 
 in fhe general provisions, of section 9, is not applicable to the chief of police, whose power of suspension is provided for especially in sections 30 and 31 of the statute.
 

 Section 32, which the chief of police relies upon, merely makes him the chief executive officer of the police force, viz.:
 

 “That the Chief of Police shall be elected by the Council, and shall be the Chief Executive Officer of the Police Force of the City of Shreveport. The said Chief of Police shall hold office during good behavior, and shall only be removed on the presentation of charges as herein provided, whenever such charges are sustained by the Board. Whenever there is a vacancy in the office of chief of police caused by death, resignation, or by operation of law as herein provided or other cause, said vacancy shall be filled by election by the Council.”
 

 To say that the chief of police is the chief executive officer of the police force does not put him — as far as the police force is concerned — above the superintendent of the department of public safety, of which the police force is a subordinate department. The chief of police is, eo nomine, the chief officer of the police force, and such an officer is, essentially, an executive officer. In State v. Gardner, 88 Minn. 130, 92 N. W. 529, it was held that a police officer of a municipality was an executive officer, within the meaning of a statute (Gen. Stat. 1894, § 6327) providing for the punishment of kny executive officer who asked for, received, or agreed to receive any bribe. In Haynes v. Commonwealth, 104 Va. 854, 52 S. E. 358, it was held that a policeman was not merely a ministerial officer but an executive officer, and hence that a person who bribed a policeman was subject to punishment under a statute providing that “if any person give or offer any gift or gratuity to any executive officer with intent to influence his act, decision, or judgment on any matter or question which is or may be then pending or may be brought before him
 
 *340
 
 in his official capacity, shall, on conviction, be punished,” etc.
 

 The declaration in section 32 of the statute that the chief of police shall be the chief executive officer of the police force is very far from saying that his authority, as far as the police force is concerned, is above that of the superintendent of the department of public safety — of which department the police forcé is a subordinate department of the government of the city.- •
 

 The author of this civil service statute, which is a local and special .law, applying only to the city of Shreveport, must have known that, under Act 302 of 1910, providing a commission form of government for . the eity of Shreveport, the police department of the city was under the authority of the superintendent of the department of public safety, and that he was exercising the power of appointment of the members of the force — all except the chief of police. Hence, if the author of the act of 1918 had intended to take away the authority of the superintendent of the department of public safety, in that respect, and to confer it upon the chief of police, the change in the law would have been made in unmistakable terms. The member of the House of Representatives who introduced the act of 1918 (House Bill No. 227) was an attorney at law, residing and practicing in Shreveport; and the bill was introduced “By Request”; from which it may well be inferred that the bill was introduced by request of the municipal authorities. At any rate, there can be no doubt that the author of the bill knew that, unless the new statute should change the law in that respect, the superintendent of the department of public safety would continue to have and to exorcise the power of appointing the policemen for the city of Shreveport. Therefore, if there had been an'intention to make such an important change in the system of government of the city, the change would not have been left to inference, -but would have been made deliberately and in plain terms.
 

 At a meeting of the city council, held on the 31st of January, 1931, four days after this suit' was filed, the mayor read a “statement,” declaring that, under the opinion of the city attorney, of date the 26th of January, 1931, “the following are correct deductions,” viz.:
 

 “First: That the Chief of Police of the City of Shreveport is ‘the Chief Executive Officer of the Police Force of the City of Shreveport,’ and as such is charged with the responsibilities of directing the operations of the Police Force of the City; that it is within his authority to conduct all police work, including investigations, raids, etc., and to make all arrests, as well as to do all other classes of work pertaining to the policing of the City of .Shreveport, and, in doing so, to use such methods, means, etc., and to adopt such plans, etc., as his own judgment dictates, bearing in mind, however, that he would be amenable to the proper authorities for any abuse of this authority.
 

 “Second: That, when there is a necessity for the filling of any vacancies on the Police Force, or for the eplargement of said Force, the Chief of Police of the 'City of Shreveport shall make the selection of the party or parties to go upon the Force, subject, however, to the rules and regulations of the Civil Service Commission of the City of Shreveport, and further subject to the approval of the Commissioner at the head of the department to whom is allocated the Police Department of the City of Shreveport.”
 

 One of the councilmen “moved the adoption of the statement as. read by the Mayor,”
 
 *342
 
 whereupon *it was adopted by the affirmative ■ vote of the mayor and three other members of the council — all but the superintendent of public safety.
 

 The statement of the so-called “deductions” of the city council was not adopted in the form of an ordinance or a resolution, but was merely an expression of opinion as to the consequence or effect of the adoption of the Civil Service Law. That opinion, of course, though entitled to great respect, is not controlling. Our opinion is that the city council could not, without doing violence to the requirements of section 4 of Act 302 of 1910, take away from the superintendent of the department of public safety his authority as superintendent of the police department. It was in obedience to the mandatory terms of that section of the law that the city council, by the resolution of the 14th of November, 1910, assigned the superintendence of the police department to the superintendent of the department of public safety — which was, in truth, the only “appropriate department” to which the police department could be assigned. An interesting opinion on this subject is to be found in Oliver v. Daly, 103 N. J. Law, 52, 134 A. 870, 872, rendered by the Court of Errors and Appeals of New Jersey, in October, 1926. The city of Bayonne, in that state, was governed by a statute called the Walsh Act (P. L. N. J. 1911, p. 462), establishing a commission form of government, similar to that- established by Act 302 of 1910. Commissioner Talbot was mayor and, ex officio, director of the department of public affairs; Commissioner Hersford was director of the department of revenue and finance; Commissioner O’Connell was director of the department of public safety; Commissioner Axford was director of the department of streets and public improvements; and Commissioner Daly was director of the department of parks and public property. By a vote of a majority of the commissioners, Mayor Talbot and Commissioner O’Connell voting in the negative, several resolutions were adopted, undertaking to deprive Mayor Talbot and Commissioner O’Connell of the directorate of several subordinate departments which were appropriate to the departments of which Mayor Talbot and Commissioner O’Connell were, respectively, the directors. Mayor Talbot and Commissioner O’Connell, together 'with a taxpayer, Mrs. Oliver, sued to annul the resolutions, charging that they were adopted without any intent to benefit the people of the municipality, but in betrayal of the trust imposed upon the commissioners who voted for the resolutions, and for the purpose of punishing the mayor and Commissioner O’Connell for conduct in their respective departments that was in defiance of the wishes of political friends of the members who voted for the resolutions. The Supreme Court considered the charges well founded, and annulled the resolutions. 131 A. 678. An appeal was taken to the Court of Errors and Appeals; and that court found that, although the evidence, was sufficient to create a suspicion of the truth of the charges, it was not so convincing as to convict the majority members of the board of commissioners of such grave charges. The court, however, annulled each and every one of the resolutions in so far as they undertook to deprive the mayor and Commissioner O’Connell of their directorate of the subordinate departments which were appropriate to the departments of which they were, respectively, the directors. In the course of its opinion, the court said: “The statute requires that the municipal powers and duties of this municipality shall be assigned by the board of commissioners to ‘appropriate do
 
 *344
 
 partments.' ” And the court said that any attempt to assign any municipal power otherwise than to the appropriate one of the five departments of the municipal government was “in violation of the statute, ultra vires, and void.”
 

 It is sufficient, however, in this case, to say that the city council has not undertaken, by ordinance or resolution, to take away from the superintendent of the department of public safety his authority as superintendent of the police department.
 

 Our answer to the questions propounded by the Court of Appeal is that the power of direction and control of the police department of the city of Shreveport is vested in the superintendent of the department of public safety, and so is the authority to appoint the officers of the police department, of lower rank than that of the chief of police, subject, however, to the rules and regulations of the board of civil service commissioners; and the Court of Appeal is instructed to enter a decree accordingly.
 

 . ROGERS, J., concurs in part and dissents in part.
 

 ODOM, J., dissents.