61 So.2d 620 (1952)
HANSEN et al.
v.
HICKENBOTHAM.
No. 19900.
Court of Appeal of Louisiana, Orleans.
December 1, 1952.
*621 Bienvenu & Culver, H. F. Foster, III, New Orleans, for plaintiffs and appellants.
Herman & Herman, New Orleans, for defendant and appellee.
JANVIER, Judge.
On March 4, 1951, at about 8:10 o'clock in the morning, there was an automobile accident in which two cars were involved on Louisiana Highway No. 51, about two miles west of LaPlace, Louisiana. The cars were going in the same direction towards Ponchatoula. The 1949 Ford of the plaintiff, Frederick H. Hansen, driven by him, was in front and following it was the 1939 Plymouth belonging to and driven by Austin Hickenbotham. As the two cars were attempting to pass around a third car which was standing stationary, apparently partly on the paved highway and partly on the right shoulder, the car of Hickenbotham crashed into the rear of the leading Hansen car, and both cars sustained damage.
Mr. Hansen had secured from Houston Fire & Casualty Insurance Company a policy of "collision" insurance under which the said company had agreed that should Mr. Hansen's car be damaged in collision, it, the insurer, would pay for such portion of the necessary repair bill as should be in excess of $100, and, accordingly, when the repairs to the Hansen car were made, he himself paid $100 on account of the bill and the insurance company paid the remaining portion of the bill, which bill totaled $247.60.
In connection with a written statement given to the insurer by Mrs. Hansen, she executed a written subrogation in which she undertook to grant to the insurer a subrogation pro tanto to any rights Mr. Hansen may have had against any person responsible for the said loss.
This suit was then filed by Mr. Hansen and the said insurer, Houston Fire & Casualty Insurance Company, Mr. Hansen claiming the $100 paid by him and the insurer claiming the balance of the repair bill to-wit $147.60, which had been paid by it.
The plaintiff alleged that Mr. Hansen, while driving his car at a reasonable speed along the right side of the highway, following other traffic in front of him approached a car parked on the side of the road and that it became necessary that he and the other cars which were ahead of him reduce speed as there was traffic approaching on the other side of the road and there was not sufficient room to pass between the parked car and the other vehicles going in the other direction. Plaintiffs then alleged that while the traffic ahead of Hansen and the Hansen car were still moving slowly towards the parked car, the Hansen car was suddenly struck in the rear by the Hickenbotham car with the resulting damage.
Hickenbotham answered, denying that there had been any negligence on his part, and averring that the accident had resulted solely from negligence on the part of Hansen. He averred that as his car approached the point at which the accident occurred, he noticed the Hansen car standing stationary on the right of the road and that he. *622 Hickenbotham, seeing that the highway ahead was clear, the traffic going in the other direction having already passed, attempted to pass to the left of the stationary Hansen car and the parked car ahead of it, when the Hansen car "suddenly and unexpectedly and without any notice or warning whatsoever * * * pulled out of the lane of traffic * * * directly into the path of plaintiff-in-reconvention's automobile."
Hickenbotham then assumed the position of plaintiff-in-reconvention and prayed for judgment against Hansen and his liability insurance carrier, Houston Fire & Casualty Company, in the sum of $126.55, averring that to be the cost of repairing the damage sustained by his Plymouth automobile.
During the trial, when plaintiffs sought to introduce the subrogation executed by Mrs. Hansen in favor of Houston Fire & Casualty Insurance Company, counsel for Hickenbotham objected on the ground that the subrogation had been executed by Mrs. Hansen instead of by Mr. Hansen, saying in reference to the subrogation:
"* * * inasmuch as this is a claim in part by the husband, as owner of the automobile, and as head and master of the community, and also in part by the Houston Fire and Casualty Insurance Company, the alleged subrogee of Mr. Hansen, and since the said insurance company is not the subrogee of Mr. Hansen but of Mrs. Hansen, we do not think that said exhibit should be taken in evidence."
"* * * it is signed by Mrs. Frederick Hansen and this suit is filed by Frederick Hansen, and the suit is also filed by the Houston Fire and Casualty Insurance Company, as the alleged subrogee of Frederick Hansen, and not Mrs. Frederick Hansen; * * *."
After a trial on the merits, there was judgment dismissing both the main and reconventional demands, and plaintiffs, Hansen and Houston Fire & Casualty Insurance Company, have appealed. Hickenbotham neither appealed nor answered the appeal. Consequently, there is before us only the question of whether there may be recovery by either or both of the plaintiffs.
The question raised by the objection to the subrogation seems to have been passed upon by our Supreme Court in London Guarantee & Accident Insurance Co. v. Vicksburg S. & P. R. Co., 153 La. 287, 95 So. 771, 772, in which the court, in discussing that identical contention with reference to whether subrogation is necessary in such case, said that the right of an insurer to sue in such situation
"arises from the general provisions of article 2315 of the [LSA-] Civil Code. The article gives a right of action for damages to any and every one who is injured by another's fault. If the loss of $515 which the surety company has sustained was caused by the fault or negligence of the railroad company, the latter is answerable directly to the surety company for the loss. * * *"
We followed this ruling in Universal Automobile Ins. Co. v. Manisalco, La.App., 148 So. 731.
However, even if there could be found a distinction between the situation presented here and that which was passed upon by the Supreme Court in the London Guarantee & Accident Insurance Co. v. Vicksburg case, it would not be necessary for us to reach a conclusion because we find that because of his own negligence there can be no recovery by Mr. Hansen. Therefore, even if the subrogation had been executed by him instead of by Mrs. Hansen, it would have transferred no right to recover since he, himself, because of his own fault, had no right to transfer.
The testimony as to how the accident occurred is in irreconcilable conflict. Those who were in the Hansen car insist that that car had never come to a stop, but had merely slowed down and that when Mr. Hansen attempted to maneuver it around the stationary car ahead of it, it was run into from the rear by the Hickenbotham car. Their story, on the important details of which they are in substantial *623 agreement, is stated by Mr. Hansen as follows:
"Well, we were traveling along the highway, the highway was under repair, and there was a car in front of me which I stayed behind because the highway was too narrow to pass anyone, and the car in front of me slowed down, and when he started to slow down I slowed down, and he slowed down for the reason that there was a car parked on the side of the highway and there was oncoming traffic, and there wasn't sufficient room for three cars to pass abreast, and when the oncoming traffic cleared the car in front of me proceeded and I proceeded behind him, and in doing so the back of my car was hit."
When asked: "Did your car ever come to a stop?" he answered: "No, not until after it was struck."
The version of Mr. Hickenbotham and the occupants of his car, on the other hand, is that the Hansen car had come to a stop, leaving sufficient room to its left for the Hickenbotham car to pass, and that after the traffic going in the other direction had passed, Mr. Hickenbotham attempted to drive around the Hansen car when suddenly Mr. Hansen started it forward and swerved it to its left into the path of the Hickenbotham car. Mr. Hickenbotham's testimony is as follows:
"* * * I looked down the passing lane and there was nothing coming, and I blew my horn and pulled over to the left lane and proceeded down the lane to pass them, and when I got right close up to them, about a car length from them, Mr. Hansen pulled out from behind this other car right over into my path, and there was nothing for me to do but shut my eyes, wish it well and put my brakes on."
Later, referring to Mr. Hansen, he said:
"* * * he was parked half-way in the right lane of traffic when he was parked, and he pulled over into the left lane, but when he was pulling over I hit him; he didn't have time to get over there, * * *."
On minor important details the witnesses on each side are not in complete agreement with one another, but from those minor disagreements we reach the conclusion that each attempted to tell the story as it was seen and that these disagreements do not justify the conclusion that any one of them attempted to tell what was not true.
After a study of the testimony of all we have reached the conclusion that neither driver exercised proper care as they approached the point at which there obviously was a need for extreme caution.
Ahead of the Hansen car was a parked car which blocked a part of the road. It was obvious to both drivers that because of the traffic approaching in the other direction, there was not room for them to pass around the parked car. The road was made even more narrow by the fact that there was a pile of shells on one side of the road,just which side it was on seems to be disputed by the various witnesses. Whether Mr. Hansen brought his car to a stop behind the parked car is unimportant. He was operating it slowly and yet, without ascertaining whether it was safe for him to do so and, without giving any signal indicating his intention, he swerved it to its left into the path of the on-coming Hickenbotham car. Mr. Hickenbotham may have been at fault in attempting to pass the Hansen car without first making certain that it was safe to do so, but Mr. Hansen was certainly at fault also in pulling out of his lane into the other as he did.
Since both drivers were guilty of negligence and since if either had been careful the accident would not have occurred, neither can recover.
Accordingly, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.