160 So.2d 36 (1963)
Mrs. Wilder Barnes BOUIS et al., Plaintiffs & Appellees,
v.
The EMPLOYERS LIABILITY ASSURANCE CORPORATION, Defendant & Third Party Plaintiff-Appellant,
Boyd B. DURR, Third Party Defendant-Appellee.
No. 983.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
On Rehearing January 15, 1964.
Rehearing Denied February 11, 1964.
*37 Cook, Clark, Egan, Yancey & King, by Charles D. Egan, Shreveport, for third party plaintiff-appellant.
Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Gahagan & Gahagan, by Russell E. Gahagan, Natchitoches, for defendant-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
CULPEPPER, Judge.
In this tort action, Mrs. Wilder Barnes Bouis sues for personal injuries and her husband, Ashton E. Bouis, sues for special damages caused when the automobile in which Mrs. Bouis was a passenger was struck from the rear by an automobile owned by Mr. Boyd Durr, but being used by him at the time in the performance of his duties as chief of police of the city of Natchitoches. Mr. and Mrs. Bouis named as defendants, The Employers Liability Assurance Corporation, Ltd., liability insurer of the City of Natchitoches. This insurer filed a third party demand against Boyd Durr, asking for judgment over against Durr in the full amount of any judgment that may be rendered in favor of Mr. and Mrs. Bouis in the principal action. The district judge held in favor of the plaintiffs in the principal action, but rejected the third party demand against Durr. From this judgment The Employers Liability Assurance Corporation, Ltd. has appealed. Mr. and Mrs. Bouis have answered the appeal, asking increases in the awards.
We will address ourselves first to the principal action by Mr. and Mrs. Bouis against The Employers Liability Assurance Corporation, Ltd. The first issue presented here is whether Mr. Durr was negligent in allowing the vehicle which he was driving to strike the rear of the automobile in which Mrs. Bouis was a passenger. The relevant facts show that a funeral procession was moving south along Third Street in the City of Natchitoches. The police vehicle, being driven by Mr. Durr, was the last vehicle in the procession. The Moses' car, in which Mrs. Bouis was a passenger, was immediately in front of the Durr vehicle. The cars were going from 5 to 8 miles per hour. As the Moses car went through the intersection of Third Street with St. Denis Street, a car ahead in the procession had trouble on a hill and stopped. This caused the vehicles to its rear, including the Moses' car, to stop. The police car being driven by Mr. Durr did not stop. Instead, Durr drove forward at a speed of *38 about 5 miles per hour and struck the rear of the Moses vehicle. Chief Durr's explanation was that, as he reached the intersection of Third Street with St. Denis Street, the procession was passing through a red traffic signal light. He had looked off to his left to see if anyone was coming out into Third Street from St. Denis Street. When he looked back, he was too close to avoid striking the Moses' car, which had stopped ahead of him.
The defendant insurer argues that this was an unavoidable accident; that Chief Durr's official duty required him to check for vehicles coming out of St. Denis Street; that he could not look in two directions at once and when he was able to again turn his attention to the Moses' car, it had come to an unexpected stop and the collision was inevitable.
We cannot agree with this argument. The jurisprudence is well established that the operator of the following vehicle is required to keep his car under control; to observe the forward vehicle; to follow same at a safe distance and if an accident occurs he is generally presumed to be negligent where a rear end collision occurs. See Foster v. Phoenix Insurance Company, 146 So.2d 647 (1st Cir.App.1962) and the cases cited therein. The stop which was made by the Moses' car was not so sudden or unexpected that if Chief Durr had been observing ahead, and following at a safe distance, he would not have been able to avoid the collision. We think the trial judge correctly concluded that Chief Durr was negligent. Accordingly, the defendant insurer is liable to Mr. and Mrs. Bouis for the damages sustained.
We will now consider the third party demand by the defendant insurer against Chief Durr, for judgment over against Durr in the full amount of any judgment rendered in favor of Mr. and Mrs. Bouis. The defendant insurer contends that even though the named insurer, the City of Natchitoches, is covered by the policy provisions, the driver of the vehicle, Chief Durr, was not an "insured" under the definition contained in the policy. Citing London, Guarantee & Accident Insurance Co. v. Vicksburg, S. & P.R. Co., 153 La. 287, 95 So. 771, Universal Automobile Insurance Co. v. Manisalco, La.App., 148 So. 731, and Hansen v. Hickenbotham, La.App., 61 So. 2d 620, the defendant insurer argues that under the general provisions of L.S.A.-C.C. Art. 2315 it is entitled to recover from Durr any damages it suffers through Durr's fault. We do not find it necessary to pass on this fundamental premise for the third party demand because we have concluded that Chief Durr was an "insured" driver under the policy provisions.
The policy provision in question is Insuring Agreement III, which gives the definition of "insured". The pertinent provision states that coverage is extended to "* * * any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured." The vehicle was a "non-owned automobile", i. e., it was not owned by the named insured, the City of Natchitoches. It was owned by Chief Durr and was being used for city business, i. e., handling traffic for a funeral procession. The sole issue is whether Chief of Police Durr was an executive officer of the City of Natchitoches. If he was, then he is an insured under the policy and the third party demand against him must be denied.
Black's Law Dictionary, 4th Ed., defines "Executive Officer" as follows:
"An officer of the executive department of government; one in whom resides the power to execute the laws; one whose duties are to cause the laws to be executed and obeyed. People v. Salsbury, 134 Mich. 537, 96 N.W. [936] 939; Petterson v. State, Tex.Cr.App., 58 S.W. 100; Mekota v. State Board of Equalization and Assessment, [146] Neb. [370], 19 N.W.2d 633, 640. An administrative officer. Sheely v. People, 54 Colo. 136, 129 P. 201, 203.

*39 "Officers who are neither judicial nor legislative are executive officers. Spivey v. State, 69 Okl.Cr. 397, 104 P.2d 263, 277; State v. Emory, 55 Idaho 649, 46 P.2d 67, 68.
"One vested with power to carry out obligations intrusted to him and charged with administrative duties relative to executing, performing and carrying into effect purposes of his employment. State Automobile Mutual Ins. Ass'n of Columbus v. Freidman, 122 Ohio St. 344, 171 N.E. 591, 592.
"One who assumes command or control and directs course of business, or some part thereof, and who outlines duties and directs work of subordinate employees. Arkansas Amusement Corporation v. Kempner, 182 Ark. 897, 33 S. W.2d 42, 43."
As regards the word "officer" our Supreme Court has held in the case of Hall v. City of Shreveport, 157 La. 589, 102 So. 680 that a policeman is a public officer who exercises some portion of the sovereign power of the state. In the recent case of Myers v. Fidelity & Casualty Company of New York, La.App., 152 So.2d 96, this court held that a policeman may be both an officer and an employee. In the case of Dawkins v. Bazer, 172 La. 327, 134 So. 238 the court held that the chief of police of the City of Shreveport is the chief executive officer of the police force, in interpreting a Civil Service Act
Under these authorities we have no difficulty in concluding that the chief of police of the City of Natchitoches is an executive officer. Certainly he is an officer and we think it is just as clear that he is an executive. Therefore, Chief Durr was an insured under the policy and the third party demand against him must be rejected.
The next issue is the quantum of damages. The district judge awarded Mrs. Bouis $2,000 for a whiplash injury and awarded Mr. Bouis $265 for medical expense and other special damages. The defendant contends the award to Mrs. Bouis was excessive. Plaintiffs have answered the appeal asking increases in both awards.
Without detailing the expert medical testimony, or the lay testimony, we think that the award of $2,000 to Mrs. Bouis is neither inadequate nor excessive. The record shows that Mrs. Bouis did suffer a whiplash injury. She was not hospitalized nor placed in traction nor did she wear a brace, but she did stay in bed for two weeks at home and took medicine for pain and muscle relaxation. She continued to suffer periodic episodes of pain for several months and complained of pain to the date of trial, eight months after the accident, but neither the treating physician nor the orthopedic specialist were able to find any objective symptoms after 7 or 8 months. See Cassreino v. Brown, La.App., 144 So.2d 608 which sets forth general guide lines for whiplash injuries, with citation of authority.
Mr. Bouis requests an increase in his award to cover the loss of Mrs. Bouis's services as a bookkeeper and record keeper at the service station which he operated. He asks $250 to cover this item. It is our opinion the evidence does not show with sufficient certainty how much time Mrs. Bouis missed from these bookkeeping activities nor does it show the value thereof nor that anyone was paid to perform these services.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant, The Employers Liability Assurance Corporation, Ltd.
Affirmed.

ON REHEARING.
En Banc.
PER CURIAM.
A limited rehearing was granted to consider a new argument made by the defendant insurer, The Employers Liability Assurance *40 Corporation, Ltd. This argument, made for the first time in defendant insurer's application for rehearing, addresses itself solely to the third party demand against Police Chief Boyd Durr. The argument is as follows:
In our original opinion we found that Police Chief Durr was an executive officer of the city and that, at the time of the accident, he was driving a "non-owned automobile", i. e., an automobile which did not belong to the named insured, the city of Natchitoches, but instead belonged to Chief Durr personally. The defendant insurer now calls to our attention for the first time, Subdivision (e) of Insuring Agreement III which reads as follows:
"III. Definition of `Insured'.
"The unqualified `insured' includes the named insured and also includes * * (2) under coverages A and C, (which are the coverages for bodily injury and property damage caused by the operation of an automobile) * * * any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:
* * *
"(e) with respect to any non-owned automobile, to any executive officer, if such automobile is owned by him or a member of the same household."
We have studied the policy carefully and have researched the law thoroughly, but have been unable to find an answer to the defendant insurer's argument. The above quoted provisions seem to clearly state that if an executive officer is driving an automobile owned by him, the insurance does not apply under coverages A and C relative to personal injuries and property damage caused by operation of an automobile. As stated above, Police Chief Durr was an executive officer and he was driving his own automobile at the time of the accident. Therefore, he was not an insured under the policy.
Since Police Chief Durr was not an insured under the policy, he is liable to the defendant insurer for any loss which it sustains through Durr's fault. See Hansen v. Hickenbotham, 61 So.2d 620 (Orleans App.1952) and the cases cited therein. The third party demand against Durr was clearly authorized under the provisions of LSA-C.C.P. art. 1111, which provides in pertinent part "The defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand."
It is therefore our conclusion that our original opinion and decree must be changed so as to hold in favor of the defendant insurer on its third party demand against Police Chief Boyd B. Durr.
For the reasons assigned, the judgment in the principal action is affirmed in favor of Mrs. Wilder Barnes Bouis and Ashton E. Bouis, and against the defendant, The Employers Liability Assurance Corporation, Ltd. The judgment appealed is reversed and set aside insofar as it rejects the defendant insurer's third party demand against Boyd B. Durr, and it is now ordered, adjudged and decreed that there be judgment herein in favor of the third party plaintiff. The Employers Liability Assurance Corporation, Ltd., and against the third party defendant, Boyd B. Durr, in the full amount of the judgment rendered against the third party plaintiff, and in favor of the plaintiffs in the principal action.
Affirmed in part, reversed and rendered in part.
ON APPLICATION FOR REHEARING.
En Banc. Rehearing denied.
FRUGE, J., dissents from refusal to grant rehearing.
*41 TATE, Judge (concurring).
It seems to me that we have reached the wrong result in our opinion on rehearing, although no authority has been cited to us which demonstrates why.
The defendant insurer, Employers, issued a liability policy insuring the City of Natchitoches. As a result of this policy, it was liable for the damages in this case, caused by the negligence of Chief Durr in the performance of city business.
Employers, however, asserted a third party demand against Chief Durr on the ground that he himself was not an additional insured under its policya position which I think is correct, as held in our opinion on rehearing, because the policy excludes from the definition of an additional "insured" an executive officer with respect to an automobile "owned by him or a member of his household", Insuring Agreement III(e), quoted in opinion on rehearing.
The position of Employers, thus, is that, although it did insure the city for Chief Durr's negligence, it did not insure Durr himself, so that the insurer is therefore entitled to be subrogated to the city's claim against Durr for indemnification from its negligent employee. LSA-Civil Code Article 2161(3); Clause 15, "Conditions" of Exhibit D-2 (Employers' policy.)
The right of the city to recover from its negligent employee for damages for which the city is liable, arises under the Louisiana doctrine that one vicariously liable for the fault of another as to third persons, may nevertheless recover from such tort-feasor the damages for which the principal is held liable to the third person under the doctrine of respondeat superior. As stated in Williams v. Marionneaux, 240 La. 713, 124 So.2d 919, 922, "* * * since the liability of the master in a case like this is purely derivative, he is entitled to reimbursement from this servant, the one primarily responsible, in the event he is required to pay damages to the injured party resulting from the servant's negligence."
It simply does not seem fair to me that the master's right to require indemnification from the servant, if the master wishes, should automatically, without further action by the master, nevertheless adhere in favor of the master's liability insurer. The master has paid this insurer a premium to protect himself against recovery of tort losses caused to him by his servantand yet, if the faithful servant is required to make good the insurer's loss, it will be the servant who pays the loss, not the insurer.
In a sense, the master's right of indemnification might be regarded as personal to him.
In the absence of insurance, for instance in the railroad field and in the multitudes of railroad cases decided since the dawn of modern tort law, one never reads of railroad companies suing or impleading the railroad engineer to recover over for losses caused by the engineer's technical fault or negligence. Actually, the tort-caused losses of modern industry should be borne as an expense of the industry and passed on to the consumers, rather than borne by a single employee, who in the complicated and crowded machine age of today may technically be at "fault", but whose fault is a foreseeable incident of the enterprise which will recur from time to time.
In a further sense, the purpose of the city's purchasing liability insurance is substantially defeated if we permit the city's liability insurer to recover from its officer for tort losses caused by his technical fault in the performance of the city's business. It is most probable that the city will not wish its police officer to pay personally out of his pocket for losses resulting from his actions while on the city's business, and will reimburse him for such city-business lossthe city received the benefit of his actions and paid him wages to perform his duties, and I think it entirely beyond the anticipations or expectations of either the *42 city or Chief Durr that he should have to pay from his own pocket losses resulting from the conduct of the city's business.
It is to be remembered that the city is a corporation which can only act through agents and servants. The city itself cannot commit a negligent act except through these agents and servants. Thus, in every case in which the insurer is held liable because of negligent acts done on behalf of the city, the insurer will be entitled to reimbursement from some city agent or employee who committed the act in the furtherance of the city's business.
The function of the city's liability insurer, then, is limited to its serving only as surety for instances of tort liability (unlike, for instance, the liability coverage issued to an individual), with the ultimate loss to be collected from the employees through whom the city's negligence was committed. The insurer, which for a premium issued the liability policy, is not to be ultimately responsible for the loss, it is just to act as a collection agency to assure payment from the city employees technically at fault.
Broadly speaking it seems to me that the exclusion of Chief Durr as an additional insured while driving his own automobile, was really to prevent the insurer from being faced with the contention that Chief Durr was an additional insured while driving his own car on personal non-city business. I must admit that the literal terms of the insurance policy do seem to exclude him as an additional insured also while driving his own car on city business; but it just seems to me that the construction of the policy we have adopted should be beyond the intention of the parties to the insurance contract, at least insofar as permitting the insurer to recover from a city employee or city official for losses resulting when that individual was on city business, a risk intended to be insured by the insurance contract.
I am frank to state that no authority has been called to our attention to such effect, nor was I able to locate any in the time available for research on the question, but nevertheless my personal opinion is that the city's right for indemnification from its negligent employee should not be available to a liability insurer which has received a premium to insure the risk arising by reason of such negligence.
I am concurring rather than dissenting in the denial of rehearing, however, because I believe the result reached is not inconsistent with legal principles thus far announced by our state Supreme Court in connection with the master-servant indemnification question. Nevertheless, I do believe that this high tribunal may wish to re-examine the question to determine whether such reimbursement rights should be applicable in a situation such as the present, as well as to determine whether the result reached can be deemed consistent with the intention of the parties to the insurance contract.