164 So.2d 630 (1964)
Mrs. Rosalind O. POLEMAN and George H. Poleman, Plaintiffs and Appellees,
v.
EMPLOYERS LIABILITY ASSURANCE CORPORATION, Ltd., et al., Defendants and Appellants.
No. 1139.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1964.
Rehearings Denied June 17, 1964.
Cunningham & Cunningham, by W. Peyton Cunningham, Jr., Natchitoches, for defendants-appellants.
Thomas & Friedman, by Gerard F. Thomas, Jr., Natchitoches, for plaintiffs appellees.
Before TATE, SAVOY and CULPEPPER, JJ.
*631 CULPEPPER, Judge.
This is a suit for damages arising out of an accident in which plaintiffs' automobile was struck from the rear by a vehicle being driven by defendant's insured. Under the provisions of LSA-C.C.P. Articles 1731 1735 the issue of negligence was tried by the district judge and the issue of damages by a jury. Judgment in the sum of $10,000 was rendered in favor of Mrs. Poleman for her pain, suffering and disability. The sum of $16,959.36 was awarded to her husband, Mr. Poleman, for special damages. Defendant appealed, alleging error on both the issue of negligence and the issue of quantum of damages.
The facts relating to the occurrence of the accident show that on December 8, 1962, during hours of daylight, Mrs. Poleman was driving in a southerly direction on Williams Avenue in the city of Natchitoches. Following her at a distance of about 50 feet was the vehicle being driven by 17 year old Guy Nesom, defendant's insured. Immediately ahead of Mrs. Poleman were two other cars. The leading car slowed down momentarily. The car ahead of Mrs. Poleman stopped and she had to stop. Young Nesom applied his brakes but was unable to stop before striking the rear end of the Poleman automobile. As a result of the impact the Poleman vehicle was damaged and Mrs. Poleman received physical injuries hereinafter described.
In finding young Nesom guilty of negligence the district judge applied the well established general rule that the operator of a following vehicle must observe the vehicle ahead and maintain such a speed and interval as will enable him to avoid a collision with the leading car, under circumstances reasonably to be anticipated. See Bouis v. Employers Liability Assurance Corp., La.App., 160 So.2d 36 and the authorities cited therein. Defendant seeks to avoid the application of this general rule under several cases in which the leading motorist stopped suddenly on the open highway, abruptly turned into the path of a car or otherwise acted in a negligent manner which the following motorist was not required to reasonably anticipate. Nomey v. Great American Indemnity Co., La.App., 121 So.2d 763; Thomas v. Attison, La.App., 125 So.2d 511; Elder v. Travelers Indemnity Co., La.App., 125 So. 2d 694; Brown v. Rollinson, La.App., 134 So.2d 104. It is defendant's contention that Mrs. Poleman did not give any signal of her intention to stop and that she stopped so suddenly and unexpectedly that young Nesom is absolved of negligence. Alternatively, defendant contends Mrs. Poleman was guilty of contributory negligence barring her recovery.
In a well considered written opinion the district judge has found as a fact that young Nesom should have reasonably anticipated Mrs. Poleman might have to stop. This was not a sudden stop on an open highway with both vehicles traveling at considerable speed and no circumstances indicating the lead vehicle might stop. Here Mrs. Poleman had to stop when the car ahead stopped. This case is similar to Pupillo v. Eakin, La.App., 147 So.2d 441, where defendant was following plaintiff in a "line of traffic" on a heavily traveled thoroughfare. The court held that under these circumstances it is not unusual for vehicles to have to stop or slow down and that each driver should regulate his speed and distance so as to be able to avoid colliding with the car ahead in the event of such usual traffic developments. See also Gandy v. Arrant, La.App., 50 So.2d 676. We have no difficulty in concluding that young Nesom was negligent.
Defendant's alternative plea of contributory negligence on the part of Mrs. Poleman is based largely on the fact that the red reflector on the left tail light of the Poleman vehicle was broken, so as not to flash a warning when the brakes were applied. However, the evidence shows that the bulb in the left tail light was operating and, furthermore, the right tail light, including the red reflector, was intact. Also, *632 Mrs. Poleman had to stop for the cars ahead and, even so, her stop was not so abrupt or at such a short distance ahead of Nesom as to constitute negligence.
The next issue on appeal is the quantum of damages awarded by the jury. We will first discuss the award of $10,000 to Mrs. Poleman for her pain, suffering and disability. The accident occurred on December 8, 1962. During the next two days, pain in her neck, right shoulder, right arm and in the back of her head became progressively worse until she had to consult Dr. James E. Kaufman, a general practitioner and surgeon in Natchitoches. He first diagnosed a moderately severe whiplash injury and prescribed conservative treatment consisting of muscle relaxants and medicine for pain. Mrs. Poleman continued to work at her job as a typist and stenographer but by December 20 it became necessary to place her in the hospital where she was put in traction for two or three days. On her release she was fitted with a cervical collar. She returned to work as a secretary but found it very difficult to type while wearing the cervical collar. She quit her job on January 5, 1963. Then Dr. Kaufman referred Mrs. Poleman to Dr. Ford J. McPherson, an orthopedic specialist in Shreveport, who examined her on January 7, 1963. He diagnosed a strain of the cervical tissue as well as the muscles going down into the right shoulder. He found atrophy of the musclature of the right arm, complaints of weakness in the right arm, muscle spasm, a flattened lordotic curve and stated: "questionable disturbances in sensation in the area didn't fit any clean-cut pattern, but it made you think you had better watch out, because this woman may have real nerve damage and may actually have a ruptured disc in her neck." Dr. McPherson administered injections in an attempt to block the pain from these nerves and returned her to Dr. Kaufman for further treatment.
After returning to Natchitoches, Mrs. Poleman continued to have pain and finally was again placed in the hospital from March 13 to March 23. She was treated with traction, pain killing injections, muscle relaxants and heat treatments. She was released but then returned to the hospital March 25th to the 29th. It was then decided that she should be examined by Dr. Bonn, a neurosurgeon in Shreveport. This doctor first suspected a ruptured intevertebral disc, but a myelogram proved to be negative. As a result of the myelogram procedure she developed severe headaches and had to be hospitalized again in Natchitoches from March 29 through April 3.
Mrs. Poleman was examined again by Dr. Bonn on June 28, 1963, at which time, after a very brief examination, he concluded she was much improved. Dr. Bonn was unable to relate her complaints of weakness in the right arm and pain down through the fingers to any nerve root pressure. It was his opinion that Mrs. Poleman would be completely recovered within a period of one year after the accident.
Due to continued complaints Mrs. Poleman was again examined by Dr. McPherson on October 25, 1963. He found continued atrophy of the right arm, which together with her continued complaints of pain and weakness in her arm led him to believe that she had suffered damage to the nerves supplying this member, and that this would be a permanent residual of the accident. Dr. McPherson stated "* * * she probably had some nerve damage in her neck and this was now a residual that would probably stay with her, in spite of the fact that the myelogram examination was negative." Dr. McPherson was of the opinion that she would continue to have difficulty for an indeterminable period of time, and that although she would recover from most of her complaints she would never "get all that muscle back." It was Dr. McPherson's opinion that she was 15 to 20% disabled at the time of his examination in October of 1963 but that this disability would probably diminish over the years.
*633 Mrs. Poleman and her husband testified as to her pain and suffering, her inability to do her housework, take care of their four children and engage in the normal activities of a 26 year old housewife. Their testimony essentially corroborates Dr. Kaufman and Dr. McPherson that Mrs. Poleman has suffered great pain and that she still had neck pains, headaches and weakness in her right arm up through the date of the trial, about one year after the accident.
Citing Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 defendant contends that the award of $10,000 to Mrs. Poleman is all out of proportion with awards made for similar injuries in previous cases. Defendant argues that Mrs. Poleman suffered no more than a moderate whiplash injury from which she will completely recover in not over two years. Defendant cites Cassreino v. Brown, La.App., 144 So.2d 608; Bouis v. Employers Liability Assurance Corp., La.App., 160 So.2d 36 and other cases which have awarded $2,000 to $3,000 for moderate whiplash injuries of about two years' duration.
However, we think there is sufficient evidence for the jury to have properly concluded that Mrs. Poleman suffered more than simply a moderate whiplash injury. She not only suffered pain sufficiently severe to require a total of 25 days hospitalization with traction, medication for pain, muscle relaxants and heat treatments, but also was required to wear a cervical collar, to use a traction device at home and to undergo a myelogram test which in itself is a painful and frightening procedure. Furthermore, Dr. McPherson was of the opinion that Mrs. Poleman had suffered permanent damage to the nerves supplying her right arm and that the atrophy of this member would never completely disappear. Dr. McPherson testified she would recover from most of her complaints as the years go by but she probably will always have recurring episodes of pain on becoming "too frisky."
Under these circumstances we are unable to say that the award of $10,000 is all out of proportions with awards for similar injuries in previous cases. This was more than a moderate whiplash injury and Mrs. Poleman has suffered permanent residuals. See Self v. Johnson, La.App., 124 So.2d 324 in which $9,237.50 was awarded to a 38 year old woman who suffered a whiplash injury leaving permanent neck disability and a disfiguring tilt of the head.
Next we will consider the jury's award of $16,995.36 to Mr. Poleman for special damages. The jury did not itemize this award but the medical expenses was $1,071.35 and the damage to plaintiff's automobile was $55. The first item in controversy is the sum of $250 for extra household help required during Mrs. Poleman's disability to about the time of trial. Mrs. Poleman was working at the time she was hurt and plaintiffs had a maid to take care of the house and four children. They retained this same maid after the accident and paid her the same salary but contend that the maid would have been discharged, if Mrs. Poleman had quit work and been able to do the housework. We think the award is justified. There is no contradiction to their testimony that she did the household work at times when she was unemployed.
The most seriously disputed items of special damages are future medical expense, and loss of Mrs. Poleman's earnings. Mrs. Poleman was working as a secretary earning $200 a month at the time of the accident. She quit work on January 5, 1963 but was paid 2 additional weeks, i.e., through about January 20. Also, she worked for the Police Jury during the latter part of February, 1963 and earned $78. Mrs. Poleman testified that although her right arm was still weak to some extent and she still suffered periodic headaches she did apply for regular employment in about July of 1963 and that she would have tried to work if a job had been available for her. We think a fair preponderance of the evidence *634 shows that Mrs. Poleman was disabled to work for about one year after she quit on January 5, 1963, which means that she lost $2,400 in wages, against which must be credited the $100 received in unearned terminal pay and the $78 she earned from the Police Jury, leaving a loss of earnings in the sum of $2,222.
The question of whether any award should be made for loss of additional future earnings, or for future medical expense, is much more difficult. It is true that Dr. McPherson was of the opinion Mrs. Poleman would have some continued weakness in her right arm and periodic complaints of pain when she became "too frisky" but there is no expert medical opinion whatever that Mrs. Poleman will be unable to return to work as a secretary. Strongly corroborating the argument that she is not disabled from pursuing this type of employment in the future is her own testimony that she sought regular employment in June of 1963 and that she actually did such work for about a week for the Police Jury and that she has done a considerable amount of typing for the Catholic nuns without pay. The loss of any additional future earnings is not proved, and, if allowed, would be based on pure speculation and conjecture.
As to future medical expense, the evidence is also insufficient. Dr. McPherson testified that Mrs. Poleman might need medical attention in the future if she had a temporary "flare up" following too much activity, but such complaints would require no more than perhaps a visit to a local physician. Any attempt to assess an award on such evidence would be pure speculation. Mrs. Poleman did not go to see a doctor at all from the time of her release from the hospital on April 4, 1963 until she was subsequently examined by Dr. McPherson in October of 1963. None of the doctors suggested that any further specific medical treatment or procedure was necessary.
Summarizing, it is our opinion the special damages awarded to Mr. Poleman must be reduced to the sum of $3,598.35, which is itemized as follows: Medical expense, $1,071.35; damage to automobile, $55.00; extra help, $250; loss of earnings, $2,222.
For the reasons assigned, the judgment appealed is amended so as to reduce the award to Mr. Poleman for special damages from the sum of $16,995.36 to the sum of $3,598.35. Otherwise than as herein amended the judgment is affirmed.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.