REGAN, Judge.
The plaintiffs, Mr. and Mrs. William F. Hull, filed this suit against the defendants, Basile Milazzo, Metry Cabs, Nola Cabs, Inc., St. Louis Fire and Marine Insurance Company, and Traders and General Insurance Company,[1] endeavoring to recover the sum of $15,900.34 representing personal injuries to Mrs. Hull and medical expenses incurred by Mr. Hull, which they insist were caused by the negligence of Milazzo in the operation of his taxicab.
*359 The defendants answered and denied the foregoing accusation of negligence. However, at the trial hereof the defendants conceded that they were at fault in causing the accident, so that the only issue which was posed for the trial court’s consideration was the amount of damages to be awarded to the plaintiffs.
After a trial on the merits, the lower court rendered a judgment in favor of the plaintiffs in the respective amounts of $5,000.00 for the injuries sustained by Mrs. Hull and $900.34 for medical and other expenses incurred by Mr. Hull.
From that judgment, the defendants have prosecuted this appeal. The plaintiffs have answered this appeal and requested that the award to Mrs. Hull be increased to the sum of $15,000.00.
It is apparent that the only question now posed for our consideration on the appeal hereof is whether the lower court erred in awarding a substantial judgment in favor of the plaintiffs in view of the nebulous characteristics of the evidence inscribed in this record.
The record discloses that on April 7, 1965, the plaintiffs’ automobile was rear ended by a taxicab operated by Milazzo. Mrs. Hull probably struck her chest or head upon the steering wheel and as a result thereof she later visited the emergency room of the Ochsner Foundation Hospital.
A medical report was ultimately submitted by Dr. Thomas Lee Duncan of this hospital, and admitted into evidence by stipulation of respective counsel, and it reveals that on the date of the accident Mrs. Hull was examined by a member of the Ochsner staff, who expressed the opinion that she had sustained some bruises. She then visited Dr. Duncan on April 14, 1965, one week later, at which time she complained of headaches, disorientation, soreness of her neck, chest, arms and pains in the low back region. An examination evidenced almost complete range of motion, reflected no spasm of her back muscles and no local tenderness. She complained, however, of neck pains upon movement; and the Patrick and Lessague tests, as well as pelvic rocking, caused discomfort in her left hip and back. X-rays revealed no evidence of injury or other abnormality, and this physician concluded that Mrs. Hull had been “shaken up and had sustained bruising and straining of her soft tissues”. He did not, however, find any “significant orthopedic problem”.
The record also discloses that an electrocardiogram was taken of the patient in the emergency room on the day of the accident which was slightly suggestive of a heart disorder. However, a later examination was made by Dr. Bienvenu on April 28, 1965, who is a member of the staff of the Cardiology Department at Ochsner, which disclosed that “the emergency room report was an overzealous interpretation of the electrocardiogram” and that no heart abnormalities actually existed.
The plaintiff testified that a right rear molar was broken in the accident and that three fillings were fractured as the result thereof. In the course of the trial in the lower court, the plaintiff, in order to substantiate the damage to her teeth, offered the testimony of her dentist, Dr. James F. Dominguez, who related that the molar was in fact broken and required a gold crown to restore it. He further asserted that the degree of damage to Mrs. Hull’s teeth indicated a traumatic origin, but he could not with any certainty say that the trauma emanated from this accident. He did say, however, that he had last seen Mrs. Hull on February 1, 1965, at which time her teeth were in good condition. In response to more specific questions, Dr. Dominguez pointed out that it would be quite possible to incur injuries of this nature without a manifestation thereof appearing upon the face, especially when an individual is struck under the chin.
In support of their contentions that the plaintiff did not incur any injury to her face or mouth as a result of the accident, *360 the defendants offered the testimony of Walter F. Garvey, the president of one of the defendant corporations and also a claims adjuster. He asserted that he interviewed Mrs. Hull on the day following the accident, at which time she made no complaint of any injury to her face or mouth, nor did he observe any facial damage. Moreover, counsel for the defendants insists that any dental or facial injury incurred by Mrs. Hull normally would have been inscribed in the records of Ochsner’s emergency room report.
The record finally discloses that Mrs. Hull was never absent from work as the result of her injuries. When questioned about her failure to return to Ochsner for further treatment, since she had suggested the need therefor, Mrs. Hull explained that she had just begun her employment on the staff of one of the clerks of court, and did not feel that it was wise to absent herself at such time.
The foregoing summary of the evidence adduced herein simply discloses that Mrs. Hull incurred bruising and straining of soft tissues in various areas of her body; however, there was no bone or nerve involvement, and her period of disability persisted for approximately one week.
The evidence with respect to the damage to her teeth is not as satisfactory as we would like it to be; nevertheless, it does preponderate to the effect that this aspect of her injury was caused as the result of her chin striking the steering wheel. In reaching this conclusion, we recognize that it was within the sound discretion of the trial court to determine, in this respect, the credibility and weight to be accorded to each witness’s testimony and therefore we are unable to say that this finding of fact was so erroneous and unsupported by the evidence adduced herein as to warrant reversal by us.
We have evaluated the nature of the injuries incurred by Mrs. Hull, and as a result thereof, we are compelled to reach the inevitable conclusion that the amount awarded therefor by the lower court was inordinate and exceeded the latitude of discretion accorded to trial judges in assessing damages. We are convinced that the plaintiff would be adequately compensated for all of her injuries by virtue of an award of $2,500.00.[2]
Insofar as the claim of Mr. Hull for special damages incurred by him is concerned, the record discloses a bill from Colonial Buick Co. for $26.92, one from Dr. Dominguez for $99.00 for dental treatment, and three from Ochsner Foundation Hospital, in the respective amounts of $25.-00, $99.00 and $73.00. The total of these bills is $322.92, and this is the amount which should have been awarded to him. The lower court, therefore, erred in awarding the sum of $900.34.
The claim of Mr. Hull for property damage to his automobile was insufficiently proven, and therefore no award can be made to him for this item.
For the foregoing reasons, the judgment of the lower court is amended so as to reduce the amount of the award in favor of Mrs. Hull from $5,000.00 to the sum of $2,500.00; and the award in favor of Mr. Hull is reduced from $900.34 to the sum of $322.92. As thus amended, the judgment of the lower court is affirmed.
The plaintiffs are to pay all costs of this appeal, and all other costs are to be borne by the defendants.
Amended and affirmed.

. Traders and General Insurance Company was later dismissed on motion of the plaintiffs, since they were not the insurers of the defendants in this matter.

. See Warren v. Yelloe Cab Company of Shreveport, Inc., 136 So.2d 319 (La.App., 1961); Johnson v. State Farm Mutual Automobile Ins. Co., 136 So.2d 446 (La. App., 1961); and Bouis v. Employers Liability Assurance Corporation, 160 So.2d 36 (La.App., 1963).