SAMUEL, Judge.
Appearing individually and on behalf of his minor son, plaintiff instituted this suit for the minor’s personal injuries, medical expenses incurred on the boy’s behalf and damages to his automobile (the last item being limited to $100.00, the deductible portion of plaintiff’s automobile insurance policy), all sustained as a result of a two-car collision. The defendants are the owner-driver of the other car involved in the accident and his liability insurer. Their answer denies negligence on the part of the defendant driver and alternatively pleads contributory negligence on the part of young Jenkins, driver of the plaintiff car.
After trial on the merits judgment was rendered in favor of plaintiff in the total amount of $4,194.82, $3,500.00 of which was for the boy’s injuries. All of the three litigants have appealed, plaintiff’s appeal being limited to seeking an $8,500.00 increase in the award for the minor’s injuries.
The accident occurred at about 6:30 p. m. on February 15, 1966 in the T-intersection of Veterans Highway and Downs Avenue in the Parish of Jefferson. It was dark and raining. Veterans is a four-lane highway, with two lanes for traffic traveling east or inbound toward New Orleans and two lanes for outbound vehicles traveling west. The two sets of traffic lanes are separated by a neutral ground. Downs enters Veterans from the south; it does not cross Veterans; it is the inferior street of the two and traffic on Downs is controlled by a sign requiring vehicles to stop before entering Veterans. Directly across from Downs is an opening in the Veterans neutral ground for vehicles crossing from Downs and turning left into Veterans. There is an additional or turning lane in the outbound lanes of Veterans for the use of outbound traffic desiring to make a left turn across the inbound lanes and into Downs. The width of the neutral ground itself is sufficient to accommodate only the length of one automobile; the intersection opening through the neutral ground is wide enough to accommodate four cars side-by-side.
Young Jenkins, then 16 years of age, was on Veterans proceeding east or towards New Orleans in the inbound lane next to the neutral ground. The defendant car was on Downs traveling towards Veterans; its driver intended to cross the inbound lanes of the highway and turn left into the outbound lanes.
The defendant automobile stopped behind another car waiting- at the stop sign on Downs for inbound Veterans traffic to clear. When an opening in that traffic appeared, the preceding car drove into the neutral ground area where it again stopped and waited for outbound Veterans traffic to clear in order to make a left turn into the outbound lanes. The defendant vehicle followed the preceding car, intending to drive into the neutral ground area to the right of the stopped preceding automobile. But as the defendant automobile approached the neutral ground area another automobile, which had been proceeding west on Veter *723 ans, was in the turning lane with its turn blinker flashing, indicating a left turn into Downs. The defendant driver testified such a turn would have been made through the neutral ground area he intended to occupy to the right of the vehicle which had preceded him and, to avoid a collision with the car about to turn left into the neutral ground area, he was forced to slow down. When the collision occurred the defendant automobile was barely moving and its front wheels were just in the neutral ground area with the balance of the car in the inbound highway lane or lanes. Young Jenkins swerved to his right and applied his brakes but the front of his vehicle struck the defendant car in the area of the latter’s left rear door.
Defendants contend young Jenkins was guilty of negligence in traveling at an excessive rate of speed and in failing to avoid the accident by changing traffic lanes when he discovered the defendant driver’s predicament. We do not agree with the contention.
The trial judge found the plaintiff car had been traveling at a speed of approximately 40 miles per hour, the legal limit. He concluded young Jenkins could not have avoided the accident which was caused solely by the negligence of the defendant driver in leaving his place of safety, entering the intersection with automobiles approaching from both directions on the highway, and driving into the path of the approaching plaintiff vehicle at a time when the latter was too close to avoid the collision. The evidence in the record fully supports the trial judge’s findings and conclusions.
The impact threw young Jenkins against the steering wheel, knocking out two of his front teeth and fracturing his jaw bone. He also sustained multiple, massive lacerations of the lips and gum tissue, multiple mobile (i. e., capable of being moved by finger pressure) teeth, both upper and lower, and damage to the sinus cavity. A tooth punctured a hole in the sinus cavity and had to be extracted; thus he lost three teeth. The lacerations were sutured and the jaw was wired, the immediate necessary medical services being performed under a local anesthesia and taking approximately four hours to complete. He had a severe nose bleed following the accident and at the time of trial, fourteen months later, occasionally suffered nose bleeds, particularly when swimming or diving.
The day following the accident young Jenkins returned to the hospital. On'that occasion a metal arch bar or splint was wired to the upper teeth in order to stabilize the fractured jaw. This also was done under local anesthesia.
He returned to the hospital a total of seven times to get the bar tightened. He stayed in bed for a week, was able to consume only liquid food for several days, and for six-to-eight weeks following the accident could eat only baby food or food specially prepared in a blender. Hot food irritated the healing cuts. For more than six weeks he suffered, as he testified, with a “whole mouth full of tooth aches.” After that period of time, and after the arch bar had been removed, he gradually became able to eat solid foods. He missed one week of school immediately after the accident, many other days when he would awaken with a sore mouth, and additional days when he had doctors’ appointments. In addition to the mouth and sinus problems he had neck pains and headaches for three weeks after the accident.
The testimony of Dr. St. Romain, the treating dentiest, impresses us with the serious, painful and possibly permanent nature of the minor’s injuries to the teeth. He saw young Jenkins in April, 1966 following his treatment at the hospital. At that time the boy’s mouth had healed to the point where a bridge could be prepared to replace the missing teeth. A temporary crown was put in place and two of the boy’s own teeth were cut down and denuded to receive the permanent bridge. The teeth involved were the upper left bicuspid and *724 upper left second molar. The initial process took 11&-2 hours under local anesthesia. Pain pills were prescribed for the usual aftermath of this procedure. Young Jenkins returned in May when a permanent bridge was inserted, also under anesthesia. The doctor stated that, while the bridge is termed “permanent,” over a period of time it may have to be replaced. He does not like to perform this type of work on patients under 18 years of age because a person’s teeth continue to grow and develop until 18. If Jenkins’ mouth continues to grow, the bridge will have to be replaced and the whole uncomfortable procedure performed all over again.
He advised Jenkins to be extremely careful about participating in athletics, in which he understood the boy had been very active, because a blow anywhere in the area of the bridge will affect all of the teeth in the area. The doctor stated a permanent bridge is not as effective as natural teeth because the natural tooth has its own roots and functions individually; the bridge could adversely affect the life of Jenkins’ two supporting teeth; and patients with a permanent bridge do not have the same feeling or mastication as does a person with all of his own teeth. Jenkins returned in February with a gum flare-up in the area of the last crown.
In connection with our determination of whether the award for Jenkins’ injuries is excessive or inadequate, and in accordance with the doctrine enunciated by the Supreme Court of Louisiana in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, and subsequent cases, we have considered the amounts of awards granted or approved by appellate courts of this state for somewhat similar injuries in order to decide whether or not there has been an abuse of the “much discretion” given to the trier of fact by LSA-C.C. Art. 1934(3). See particularly Hill v. Milazzo, La.App., 195 So.2d 358; Nunez v. Modern Woodcraft Co., La.App., 197 So.2d 339; Mogg v. Armstrong, La.App., 176 So.2d 463; Pupillo v. Eakin, La.App., 147 So.2d 445; See also Spizer v. Dixie Brewing Co., Inc., La.App., 210 So.2d 528, handed down May 15, 1968.
We conclude plaintiff is entitled to an award of $7,000.00 for the injuries suffered by young Jenkins.
For the reasons assigned, the judgment appealed from is amended so as to increase the award to plaintiff from $4,194.82 to $7,694.82. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs in this court to be paid by the defendants, Robert K. Johnson and Insurance Company of North America.
Amended and affirmed.